In re "AGENT ORANGE" PRODUCT LIABILITY LITIGATION.

Nos. 1076, 1080, 1082, 1086, 1091, 1092, 1093, 1094, 1096, 1125, 1126 and 1257. Dockets 85–6061, 85–6143, 85–6145, 85–6151, 85–6167, 85–6287, 85–6289, 85–6293, 85–6295, 85–6375, 85–6377 and 86–6057.

United States Court of Appeals, Second Circuit.

Argued April 10, 1986.

Decided June 10, 1987.

140

Leonard L. Rivkin, Garden City, N.Y. (Leslie R. Bennett, Barbara Petraglia Aloe, Rivkin, Radler, Dunne & Bayh, Garden City, N.Y., Cadwalader, Wickersham & Taft, Kelley Drye & Warren, Townley &

Updike, New York City, Clark, Gagliardi & Miller, White Plains, N.Y., Budd, Larner, Kent, Gross, Picillo, Rosenbaum, Greenberg & Sade, Short Hills, N.J., Shea & Gould, New York City, of counsel) for defendants-appellants Dow Chemical Co., Diamond Shamrock Chemicals Co., Hercules Inc., Monsanto Co., T H Agriculture & Nutrition Co., Thompson Chemicals Corp. and Uniroyal, Inc.

Cornish F. Hitchcock, Washington, D.C. (Alan B. Morrison, Public Citizen Litigation Group, Washington, D.C., John Catterson, Mark A. Harmon, Peter Sills, Bondy & Schloss, New York City, Barton F. Stichman, Vietnam Veterans of America Legal Services, Washington, D.C., of counsel) for intervenor-appellee Vietnam Veterans of America.

Robert Taylor, Portland, Me. (Harold L. Lichten, Barry A. Margolin, Jennifer Wriggins, Tureen & Margolin, Portland, Me., of counsel) for plaintiff-appellee Robert Grenier.

Ralph G. Elliot, Hartford, Conn., Jane E. Kirtley, Robert S. Becker, Reporters Committee for Freedom of the Press, Washington, D.C., Richard N. Winfield, Rogers & Wells, New York City, Henry L. Baumann, Steven A. Bookshester, David Barr, Barr & Teer, Washington, D.C., Katharine P. Darrow, Kenneth A. Richieri, New York City, J. Laurent Scharff, Pierson, Ball & Dowd, Bruce W. Sanford, Baker & Hostetler, Washington, D.C., of counsel, for amici curiae Reporters Committee for Freedom of the Press, Associated Press, Associated Press Managing Editors, National Ass'n of Broadcasters, Newspaper Guild, New York Times Co., Radio-Television News Directors Ass'n and Society of Professional Journalists, Sigma Delta Chi, in support of appellee Vietnam Veterans of America.

Before VAN GRAAFEILAND, KEARSE and MINER, Circuit Judges.

MINER, Circuit Judge:

Defendants-appellants Dow Chemical Company, Diamond Shamrock Chemicals Company, Hercules Incorporated, Monsanto Company, T H Agriculture & Nutrition Company, Inc., Thompson Chemicals Corporation and Uniroyal, Inc. (collectively the "chemical companies") appeal from an order of the United States District Court for the Eastern District of New York (Weinstein, Ch. J.) unsealing materials produced or generated during discovery in the Agent Orange litigation. The materials in question had been sealed pursuant to two prior protective orders of the district court.

In ordering the documents unsealed, the district court relied on the findings of Magistrate Scheindlin, who concluded that intervenor-appellee Vietnam Veterans of America ("VVA") and intervenor Victor J. Yannacone, as well as the Agent Orange Plaintiffs' Management Committee, which filed a brief in support of the VVA's motion, had a statutory right of access to the subject discovery materials by virtue of Fed.R.Civ.P. 26(c) and Fed.R.Civ.P. 5(d). In balancing the interests of the parties, Magistrate Scheindlin determined that the chemical companies should be required to demonstrate good cause for continuing the protective order as to any particular document or category of documents. Appellants contest the magistrate's determination and argue that the blanket protective orders should remain in force absent a showing of extraordinary circumstances or compelling need. We affirm.[1]

## BACKGROUND

The extensive procedural history and general background of the Agent Orange litigation is reported in *In re "Agent Orange" Product Liability Litigation MDL No. 381*, 818 F.2d 145 (2d Cir.1987), familiarity with which is assumed. Only

---

1. In a related action heard together with the instant appeal, appellant Dow Chemical Company appealed the district court's order releasing discovery materials subject to the protective orders at issue to Robert Grenier, who individually had sued Dow Chemical in the United States District Court for the District of Maine. Our affirmance of the district court's order unsealing the discovery materials in the Agent Orange litigation obviates the need to discuss the points raised in Dow Chemical's appeal.

those facts relevant to the protective orders at issue will be discussed here.

On February 6, 1981, Judge Pratt, then supervising the Agent Orange litigation, issued an order allowing the defendant chemical companies to designate as "confidential" any records that, in their estimation, contained "confidential developmental, business, research or commercial information." Any party receiving documents designated as "confidential" was required to refrain from disclosing them and to file them with the district court under seal, if filing was required. The documents were to be returned or destroyed at the end of the litigation. *See* Joint App. at 1689–95. Initial discovery involving the chemical companies took place pursuant to the February 6, 1981 order.

In May 1982, Special Master Schreiber, then supervising discovery in the litigation, orally issued a blanket protective order on all records produced or generated in discovery by any party, including the chemical companies and the government. The order provided that all documents and depositions were to be treated confidentially. In response to a motion filed on July 29, 1982, by CBS, Inc., the special master on October 14, 1982 signed a protective order incorporating procedures for dissemination of the discovery material, *see In re "Agent Orange" Product Liability Litigation*, 96 F.R.D. 582, 585–87 (E.D.N.Y.1983) (Special Master's Protective Order), and submitted a memorandum in support of the order to the district court.

The October 14, 1982 protective order provided that only "designated persons," e.g., parties, their attorneys, expert witnesses, and witnesses to depositions, would have unrestricted access to the discovery material. Under the terms of the order, those persons could disseminate discovery material to undesignated people only upon the authorization of the special master, following a review procedure. The party seeking to prevent dissemination had the burden of showing that good cause existed for continuation of the order with respect to the discovery material in question. *See* Fed.R.Civ.P. 26(c). The order also included a clause indicating that the October 14, 1982 order did not supersede the February 6, 1981 order regarding production of confidential documents.

In his supporting memorandum, the special master noted that good cause for his order existed because of the "complexity of this litigation, the emotionalism surrounding the issues, the number of documents yet to be reviewed and the desirability of moving discovery expeditiously in order to meet the June 1983 trial date." 96 F.R.D. at 583. He also concluded that the protective order did not unduly restrain first amendment rights. Finally, he noted that, "as discovery progresses and fundamental disputes are resolved, it may become desirable to lift this order." Joint App. at 1750. Judge Pratt approved and adopted the special master's protective order. 96 F.R.D. at 585.

The October 14, 1982 protective order subsequently was modified on two occasions. First, on May 12, 1983, Judge Pratt granted summary judgment in favor of four of the chemical companies based on the government contractor defense. Judge Pratt directed the special master to consider whether the blanket protective order should be modified to permit disclosure of papers and exhibits filed in connection with the summary judgment motion. *In re "Agent Orange" Product Liability Litigation*, 565 F.Supp. 1263, 1277–78 (E.D.N.Y. 1983). The special master recommended that the October 14, 1982 protective order be lifted insofar as it related to "the material submitted with and referred to in the parties' summary judgment papers." *In re "Agent Orange" Product Liability Litigation*, 98 F.R.D. 539, 548 (E.D.N.Y.1983) (Special Master's Recommendation). Judge Pratt accepted and adopted the recommendation. *Id.* at 541. A further modification of the October 14, 1982 order, pursuant to a recommendation by the special master, was adopted by Chief Judge Weinstein, who had assumed responsibility for supervision of the Agent Orange litigation. *In re "Agent Orange" Product Liability Litigation*, 99 F.R.D. 645, 646 (E.D.N.Y.1983). That modification permitted release, with the consent of the government, of both its

employees' depositions and documents it had produced that were not otherwise subject to specific protective orders filed in the litigation.[2]

On April 23, 1984, two weeks before the trial was scheduled to commence, the parties filed their pretrial orders with the clerk, attaching all of the documents and depositions they intended to offer at trial. The orders and exhibit lists were filed publicly, and the sealed exhibits were filed in a locked room at the courthouse.

On May 7, 1984, several hours before the trial was to begin, the parties agreed to a tentative settlement, subject to the approval of the court. On June 11, 1984, a formal settlement agreement was filed. This agreement set forth in detail the terms of the settlement negotiated by the parties, subject to the approval of the district court. Paragraph 12 of the settlement agreement provided that

> [t]he attorneys for the Class shall return to each defendant, respectively, all documents in their possession or control produced by that defendant, including microfilm and all copies, within 30 days after final judgment is entered in this action and is no longer subject to appeal or review, or if plaintiffs pursue claims against the United States within one year after the date of this Agreement, within 30 days after final adjudication of those claims, whichever is later.

Joint App. at 6694–95.

Before approving the settlement, Chief Judge Weinstein held Rule 23(b) fairness hearings throughout the United States. At a hearing held in New York on August 9, 1984, a representative of the VVA requested access to all of the Agent Orange discovery materials still subject to the protective orders. At the district court's direction, the VVA filed a motion returnable before Magistrate Scheindlin on August 31, 1984. Subsequently, the Agent Orange Plaintiffs' Management Committee and

Victor Yannacone, Jr., counsel for certain plaintiffs in this litigation, joined in the VVA's motion.

Before the VVA's motion was argued, the district court issued a preliminary order on September 25, 1984, tentatively approving the settlement. *In re "Agent Orange" Product Liability Litigation*, 597 F.Supp. 740 (E.D.N.Y.1984) (*"Settlement Opinion"*). Chief Judge Weinstein addressed a number of concerns raised during the course of the fairness hearings, including the concern that there be no "cover-up" of information contained in the sealed files. *Id.* at 769–70. He observed that the veterans' concern about non-disclosure, "while understandable, is not an appropriate reason for rejecting the settlement." *Id.* at 770. The district court noted that it retained the power to order documents released despite the fact that they were sealed as part of a settlement. The court directed that until the Agent Orange litigation was completed, no documents should be destroyed. In addition, Chief Judge Weinstein directed that the parties "file all depositions and other papers obtained in discovery in a depository at the courthouse in accordance with directions to be provided by a Magistrate who will determine sealing and disposition subject to appeal to the court." *Id.*

The VVA's motion subsequently was argued before Magistrate Scheindlin, who ordered that non-privileged records subject to the February 6, 1981 and October 14, 1982 protective orders be unsealed. *In re "Agent Orange" Product Liability Litigation*, 104 F.R.D. 559, 562 (E.D.N.Y.1985) (Magistrate's Pretrial Order No. 33, dated December 17, 1984) (*"Protective Orders Opinion"*). Magistrate Scheindlin noted that the records at issue fell within two categories: records accompanying the parties' pretrial orders, which were filed with the clerk, stored in the courthouse, and

---

**2.** At various times, the district court has entered specific protective orders designed to limit disclosure of particular categories of documents produced by the government, including medical files and records of the Veterans Administration, documents from a particular file of the

United States Department of Agriculture, and certain documents produced by the Environmental Protection Agency. *See In re "Agent Orange" Product Liability Litigation*, 99 F.R.D. 645, 649 (E.D.N.Y.1983).

later removed by the parties when the settlement was announced, and all other records produced during discovery, which the parties were required to file with the district court pursuant to the court's September 25, 1984 order. Judge Weinstein adopted Magistrate Scheindlin's order, *id.* at 562, but issued a stay pending final disposition of appeals from the district court's approval of the Agent Orange settlement. This appeal followed.

## DISCUSSION

Appellants raise three arguments on appeal. First, they contend that the order unsealing the discovery materials improperly alters an integral term of the settlement agreement reached with the plaintiff class. Second, they claim that the public has no right of access to the discovery materials at issue. Finally, they argue that once a protective order has been entered and relied on, it can be modified only if extraordinary circumstances or compelling needs warrant the requested modification. We discuss appellants' contentions *seriatim.*

### A. *Alteration of the Settlement Agreement*

■ Appellants contend that paragraph 12 of the settlement agreement, providing for return to appellants of documents obtained during discovery, was an integral part of the agreement, and that the district court's order unsealing the discovery materials improperly alters a term of the settlement agreement. We disagree.

When Judge Pratt entered the February 6, 1981 order, he specifically limited its applicability to the pretrial stages of the litigation and indicated that the issue of confidentiality would again be addressed once the trial was scheduled to commence. Joint App. at 1695. As to the October 14, 1982 protective order, appellants were on notice virtually from the time it was issued that the district court's order might be lifted or modified. In his memorandum in support of the order, the special master noted that it might be desirable to lift the order "as discovery progresses and funda-

mental issues are resolved." *Id.* at 1750. Later, when questions were raised during the fairness hearings regarding whether veterans and the public would have access to all discovery materials, Chief Judge Weinstein directed the VVA to move to have the protective orders lifted. At the time he tentatively approved the settlement agreement, Chief Judge Weinstein emphasized the court's inherent power to order documents released, and he directed the parties to file *all* discovery materials at the courthouse. *Settlement Opinion,* 597 F.Supp. at 770.

Despite ample indications that the protective orders might be lifted, appellants never sought to be released from the settlement agreement, nor do they seek that relief here. Moreover, the terms of paragraph 12 contemplated that some of the protected materials eventually might be introduced into evidence during the plaintiff class' then-pending suit against the United States, and therefore would become part of the public record. Appellants also were aware that the materials, once discovered, could be introduced into evidence in many non-class suits then pending. More importantly, appellants doubtless were aware that, regardless of the terms of the settlement agreement reached between the chemical companies and the plaintiff class, such an agreement could not prevent interested non-class member parties from intervening to seek access to the discovery materials. We therefore have difficulty accepting appellants' assertion that "maintenance of the protective orders *was* a *sine qua non* of the settlement and was central to resolution of the litigation." Appellants' Reply Brief at 9 (emphasis in original).

■ We recognize that the district judge generally should not dictate the terms of a settlement agreement in a class action. Rather, "he should approve or disapprove a proposed agreement as it is placed before him and should not take it upon himself to modify its terms," *In re Warner Communications Securities Litigation,* 798 F.2d 35, 37 (2d Cir.1986) (citing *Plummer v. Chemical Bank,* 668 F.2d 654, 655 n. 1 (2d Cir.1982)), subject to certain limited excep-

tions, *see, e.g., Jones v. Amalgamated Warbasse Houses, Inc.,* 721 F.2d 881, 884–85 (2d Cir.1983) (district court has discretion to modify attorneys' fee agreement submitted as part of proposed settlement of class action civil rights suit), *cert. denied,* 466 U.S. 944, 104 S.Ct. 1929, 80 L.Ed.2d 474 (1984); *Beecher v. Able,* 575 F.2d 1010, 1016 (2d Cir.1978) (district court has discretion to modify settlement agreement with respect to allocation of settlement proceeds when use of formula for allocation under agreement would lead to inequitable results). However, the language of the settlement agreement to which appellants direct our attention contains no reference to maintaining the confidentiality of the discovery materials, and our independent review of the agreement reveals no such clause. By its express terms, paragraph 12 mandates only that attorneys for the class must return to appellants any documents produced during discovery. Therefore, appellants did not bargain for or procure the continued confidentiality of the discovery materials by private agreement; rather, the confidentiality of those documents was ensured solely by independent judicial acts, i.e., the protective orders.

It is undisputed that a district court retains the power to modify or lift protective orders that it has entered. *See Palmieri v. New York,* 779 F.2d 861, 864–65 (2d Cir. 1985); *United States v. GAF Corp.,* 596 F.2d 10, 16 (2d Cir.1979); *see also* 8 C. Wright, A. Miller & F. Elliot, Federal Practice and Procedure § 2043, at 143–44 (Supp. 1986); *cf. United States v. Davis,* 702 F.2d 418, 422–23 (2d Cir.) (informal understanding of confidentiality), *cert. denied,* 463 U.S. 1215, 103 S.Ct. 3554, 77 L.Ed.2d 1400 (1983). Therefore, appellants can claim only that, by lifting the protective orders in this case, the district court effectively modified paragraph 12 in that counsel for the plaintiff class no longer are able to return the discovery materials to appellants once those documents become part of the public record. However, to the extent that the district court "modified" the settlement agreement, we hold that such an incidental modification was not an abuse of the

district court's discretion under the circumstances of this case, *cf. Beecher,* 575 F.2d at 1016; *Zients v. LaMorte,* 459 F.2d 628, 629–30 (2d Cir.1972) (district court overseeing settlement distribution has inherent power to accept late claims despite contrary terms of agreement), and we note that, despite this "modification," appellants have not sought rescission of the settlement agreement.

#### B. *Right of Access*

Magistrate Scheindlin, in an opinion adopted by the district court, determined that both Rule 26(c) and Rule 5(d) of the Federal Rules of Civil Procedure "require that discovery is presumptively open to public scrutiny unless a valid protective order directs otherwise," *Protective Orders Opinion,* 104 F.R.D. at 568, and that, as a result, appellee had a statutory right of access to the subject discovery materials. Appellee, joined by *amici curiae,* urges us to affirm the district court's order on constitutional, common law and statutory grounds. Because we hold that the statutory right of access relied on by the district court sufficiently supports the court's order, we need not discuss the other grounds raised on appeal.

■ Rule 26(c) provides, in pertinent part, that "[u]pon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed.R.Civ.P. 26(c). A plain reading of the language of Rule 26(c) demonstrates that the party seeking a protective order has the burden of showing that good cause exists for issuance of that order. It is equally apparent that the obverse also is true, i.e., if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection. *Cf. Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 37, 104 S.Ct. 2199, 2209, 81 L.Ed.2d 17 (1984) (approving trial court's finding, under Washington state statute identical to

Rule 26(c), that party seeking protective order had shown good cause for issuance of order; implicit conclusion that information would have been available to public absent demonstration of good cause). Any other conclusion effectively would negate the good cause requirement of Rule 26(c): Unless the public has a presumptive right of access to discovery materials, the party seeking to protect the materials would have no need for a judicial order since the public would not be allowed to examine the materials in any event.

Fed.R.Civ.P. 5(d) requires that all discovery materials must be filed with the district court, unless the court orders otherwise. However, due to the volume of discovery materials in the Southern and Eastern Districts of New York, this requirement has been altered by local rule, which provides that "depositions, interrogatories, requests for documents, requests for admissions, and answers and responses shall not be filed with the Clerk's Office except by order of the court." SDNY, EDNY Civ.R. 18(a). *See* Scheindlin, *Discovering the Discoverable: A Bird's Eye View of Discovery in a Complex Multidistrict Class Action Litigation,* 52 Brooklyn L.Rev. 397, 407 n. 35 (1986). Appellants disparage Rule 5(d) as merely a housekeeping rule, but an examination of the notes accompanying Rule 5(d) reveals substantive policy considerations underlying the Rule.

■ The Advisory Committee note accompanying Rule 5(d) discloses that the Committee originally had contemplated incorporating into Rule 5(d) a procedure similar to that now in effect in the Southern and Eastern Districts, but decided instead to require filing of discovery materials because "such materials are sometimes of interest to those who may have no access to them except by a requirement of filing, such as members of a class, litigants similarly situated, or the public generally." Fed.R.Civ.P. 5(d) advisory committee note. As Judge Mansfield, then Chairman of the Advisory Committee on Civil Rules, noted at the time of the Rule's amendment, the drafters of Rule 5(d)

anticipate[d] (and so stated in our committee notes accompanying the proposal) that a judge would not be expected to excuse parties from filing materials in any case in which the public or the press has an interest, such as a Watergate or similar scandal. Moreover, should the public importance of the material not appear until after filing has been excused, it is expected that the judge, upon motion of the press or other interested persons, would order the parties to file the documents for inspection.

N.Y. Times, Aug. 2, 1980, at 20, col. 4 (letter to the Editor). Moreover, when the Advisory Committee proposed amending Rule 5(d) in 1978 so that it would function similarly to Local Rule 18(a), it offered the following caveat:

any party may request that designated materials be filed, and the court may require filing on its own motion. It is intended that the court may order filing on its own motion at the request of a person who is not a party who desires access to public records, subject to the provisions of Rule 26(c).

Fed.R.Civ.P. 5(d) advisory committee note (1978 proposed amendments), *reprinted in* 77 F.R.D. 613, 623 (1978). The Advisory Committee notes make clear that Rule 5(d), far from being a housekeeping rule, embodies the Committee's concern that class action litigants and the general public be afforded access to discovery materials whenever possible. Moreover, we note that access is particularly appropriate when the subject matter of the litigation is of especial public interest, which certainly is true of the Agent Orange litigation. Therefore, we agree with Magistrate Scheindlin's determination, adopted by the district court, that Rule 5(d) and Rule 26(c) provide a statutory right of access to the discovery materials in question.

■ Appellants raise an additional point regarding the scope of the district court's Rule 5(d) order, which required appellants to file all discovery materials with the court. They assert that documents produced for discovery and inspection in response to Rule 34 document requests are not "pa-

pers" within the meaning of Rule 5(d). Rule 34, unlike other rules governing discovery, does not provide that responsive material be filed with the court and made part of the public record. *See In re Halkin*, 598 F.2d 176, 191 n. 26 (D.C.Cir.1979). However, the district court's order clearly required the filing of all discovery materials, including those made available for inspection. While such documents technically may not fall within the terms of Rule 5(d), we find no abuse of discretion in the district court's order in light of the district court's broad supervisory authority in class actions. It would make little sense to allow access to documents requesting inspection of discovery materials and documents facilitating the inspection of discovery materials, without allowing access to the discovery materials themselves. We emphasize that Magistrate Scheindlin set forth a procedure whereby appellants can seek continued protection for any discovery materials in the Agent Orange litigation. Appellants thereby can ameliorate the effect of the district court's order requiring the filing of all discovery materials and its subsequent order unsealing those materials.

### C. *Standard for Modifying Protective Orders*

As discussed above, there is no question that a Rule 26(c) protective order is subject to modification. Whether to lift or modify a protective order is a decision committed to the sound discretion of the trial court. *Krause v. Rhodes*, 671 F.2d 212, 219 (6th Cir.), *cert. denied*, 459 U.S. 823, 103 S.Ct. 54, 74 L.Ed.2d 59 (1982). Appellants contend that this circuit requires that "[o]nce a confidentiality order has been entered and relied upon, it can only be modified if an 'extraordinary circumstance' or 'compelling need' warrants the requested modification." *Federal Deposit Ins. Corp. v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir.1982) (per curiam) (citation omitted); *see Palmieri v. New York*, 779 F.2d 861, 865 (2d Cir.1985); *Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291, 295 (2d Cir.1979). Magistrate Scheindlin determined, however, that the

cases cited by appellants were inapplicable to the Agent Orange litigation, and concluded that the burden of proof should remain with the proponents of continued protection. We need not reach that issue, however, because, assuming without deciding that the *Ernst & Ernst* standard applies, appellee has demonstrated both that appellants reasonably could not have relied on the protective orders and that extraordinary circumstances warrant modification.

In each of the cases cited by appellants, the parties seeking the protective order relied on the *permanence* of that order. In *Martindell*, the parties entered a stipulation of confidentiality ensuring that the material provided would not be used for any purpose other than preparing for and conducting the litigation between them. *Martindell*, 594 F.2d at 293. In *Palmieri*, the protective order specifically was entered to prevent subsequent inquiry by a government agency, thereby encouraging settlement negotiations. *Palmieri*, 779 F.2d at 863. In *Ernst & Ernst*, the settlement expressly was made contingent upon a court order ensuring the confidentiality of the settlement terms. *Ernst & Ernst*, 677 F.2d at 231. In contrast, as discussed above, appellants in the Agent Orange litigation could not have relied on the permanence of the protective order. The February 6, 1981 order by its very terms was applicable solely to the pretrial stages of the litigation. Judge Pratt specifically indicated that the confidentiality issue would be reconsidered upon commencement of the trial. The fact that the litigation resulted in a settlement rather than a trial does not alter the temporary nature of the February 6, 1981 order. Similarly, appellants had ample warning that the October 14, 1982 order was of a temporary nature: Any reliance on such a sweeping, temporary protective order simply was misplaced.

More significantly, appellants never have been required to demonstrate good cause for shielding any document from public view. Under the February 6, 1981 order, appellants needed only to designate discovery materials as confidential to protect them. Under the October 14, 1982 order,

all materials were protected regardless of whether appellants themselves considered protection to be necessary. We conclude that the exceptionally pervasive protection granted appellants during the pretrial stages of this litigation, coupled with the fact that appellants never were required to show good cause as mandated by Rule 26(c), amounts to the type of extraordinary circumstances contemplated in our prior decisions. Although we believe that the unusual scope of the Agent Orange litigation warranted imposition of the protective orders at issue, we note that, had the district court not lifted the orders, we would be compelled to find that the orders had been improvidently granted because the district court never required appellants to make the requisite good cause showing. Improvidence in the granting of a protective order is yet another justification for lifting or modifying the order. *See Martindell*, 594 F.2d at 296. We are satisfied, however, that the district court properly entered the orders initially as temporary measures, and properly lifted them thereafter.

■ Appellants argue that the cost of poring through the voluminous discovery materials in the Agent Orange litigation would be prohibitive. However, appellants would have had to bear that cost during the pretrial stages of the litigation except for the protective orders. The orders merely delayed a document-by-document assessment; they did not obviate the need for such an assessment. Moreover, appellants' assertion is somewhat disingenuous in that many of the discovery materials previously had been designated as confidential, and many more were examined and catalogued in preparation for trial. Any inconvenience to which appellants are subjected certainly is outweighed by the enormous public interest in the Agent Orange litigation and the compelling need for class members and non-class members alike to evaluate fully the efficacy of settling this litigation. Under the circumstances, we hold that the district court was well within its discretion to lift the protective orders at issue, subject to a showing, on an individualized basis, of good cause for continued protection.

## CONCLUSION

Based on the foregoing, the order of the district court lifting the protective orders in the Agent Orange litigation is affirmed.