**WESTCHESTER RADIOLOGICAL ASSOCIATION P.C., et al.,**
**Plaintiffs,**

v.

**BLUE CROSS/BLUE SHIELD OF GREATER NEW YORK, INC.,**
**Defendant.**

**No. 85 CV 2733 (KMW).**

United States District Court,
S.D. New York.

July 3, 1991.

See also 884 F.2d 707.

---

Daniel P. Levitt, Reid & Priest, New York City, David A. Zarett, Garfunkel, Wild & Travis, Great Neck, N.Y., for plaintiffs.

Robert A. Bicks, Howard Wolfson, Breed, Abbott & Morgan, New York City, for defendant.

Karen B. Newman, Nixon, Hargrave, Devans & Doyle, Garden City, N.Y., for St. Joseph's Medical Center, Cabrini, St. Vincent's.

S. Andrew Schaffer, Gen. Counsel, Lorraine Egan, Acting Associate Gen. Counsel, New York City, for non-party NYU/NYU Medical Center.

Andrew Schulz, Kalkines, Arky, Zall & Bernstein, New York City, non-party Doctors' Hosp. of S.I., Jamaica Hosp., Memorial Hosp. for Cancer Montefiore, St. Vincent's Hosp., Vassar Bros. Hosp., Jack D. Weiler Hosp.

## MEMORANDUM OPINION

KIMBA M. WOOD, District Judge.

In the course of an antitrust suit brought by radiologists against defendant complaining about the manner in which defendant compensated radiologists for their services, at least two radiologists testified to having taken actions that defendant contends may constitute Medicare fraud or abuse on the part of radiologists. The testimony was given freely, without any confidentiality order being sought at the time. Similarly, documents relevant to these activities were produced without any claim for confidentiality being made at the time. Later, when non-parties sought a confidentiality order, a sweeping confidentiality order was entered by Magistrate Judge Francis (the "Protective Order"), and adopted without argument by Judge Kram, that permitted earlier discovery to be subjected to the confidentiality restrictions. Defendant has now moved to relax or rescind the order's restrictions, pursuant to paragraph 16 of the order:

> This order is entered without prejudice to the right of any party or non-party to apply to the Court at any time for additional protection, or to relax or rescind the restrictions of this Order, when convenience or necessity requires.

The modification defendant seeks is limited; defendant seeks (1) to disclose only documents and testimony given before any claim of confidentiality was made and before any protective order was in place, and (2) to make the disclosures only to the federal Health Care Financing Administration ("HCFA") or to Blue Cross personnel involved in the performance of defendant's Medicare functions. Defendant claims that it is unlike a private adversary who seeks to turn over to an enforcement agency "dirt" about its adversary for the purpose of extracting a settlement unwarranted by the merits, or for the purpose of gratuitously seeking to bring down the government's wrath on its adversary. Here the antitrust action is completely concluded,[1]

---

1. Plaintiffs and intervenors have argued that this motion is untimely because the underlying litigation has ended. A court that enters a protective order retains the power to modify it as long as it is in effect, even if the underlying suit has been dismissed. *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir.1990) *cert. denied,* — U.S. —, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991). This power derives from the "force of principles inherent in the jurisdiction of chancery." *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 782 (1st Cir. 1988) (quoting *United States v. Swift & Co.*, 286 U.S. 106, 114–15, 52 S.Ct. 460, 462, 76 L.Ed. 999), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989).

Plaintiffs and intervenors also argue that it would have been more appropriate for defendant to appeal from the entry of the protective order. Defendant is not attacking the entry of the protective order, however; it is seeking to modify it, in part because of changed circumstances.

Because this litigation is now finally concluded, it is appropriate for the court to consider whether Magistrate Judge Francis' March 29, 1988 conclusion that there is good cause to believe "that the disclosure of information subpoenaed by defendant in this action can be used for purposes of harassment" still has force. March 29, 1988 Order. Although it is conceivable that adversaries can harass one another post-litigation, the potentially diminished inter-

and defendant is thus not seeking a litigation advantage by disclosing this information to the HCFA. Unlike a private citizen gratuitously handing information over to the government, defendant is a "fiscal intermediary" between certain health care providers (who are respondents here) and Medicare, and has an express obligation to advise Medicare of information potentially constituting Medicare fraud when that information becomes known to defendant. *See, e.g.,* Medicare Carriers Manual, Part 3, Ch. 11, § 11003. Indeed, the health care provider itself may be required by Medicare to advise defendant of information of the type that Blue Cross discovered for the first time in the course of this litigation and seeks now to have released from the constraints of the protective order. Medicare Health Ins. Manual 15 § 2108.6–B.

This motion presents an apparently unprecedented combination of factors. In the typical case, courts refuse to permit disclosure to enforcement agencies of discovery materials in private actions either because the case is ongoing and disclosure is being sought in a transparent attempt to gain litigation advantage by harassing one's adversary, or because the court believes that the free flow of testimony given pursuant to a confidentiality order is likely to be choked off by later lifting of confidentiality orders, or both. Because litigation in this case is over, and the testimony at issue was given long before anyone sought to protect it by a confidentiality order, the concerns present in the typical case are not present here.

Courts, in considering whether to relax the terms of confidentiality orders, often consider the expectations of the producing parties, as evidenced by what protections were in place when the discovery was made, and the extent to which the court believes there is a public interest in disclosure either of discovery materials generally, or of the particular discovery materials in the case at hand. I will address these factors in turn.

est adversaries have in doing so warrants reexamination of the matter due to changed cir-

### A. Expectation of Privacy

#### 1. Timing of Issuance of Confidentiality Order

The importance of taking into account the extent to which there was an expectation of privacy *when testimony was given or when documents were turned over to an adversary* is underscored by the Second Circuit decision in *Martindell v. International Tel. & Tel. Corp.,* 594 F.2d 291 (2d Cir.1979). There, the court noted that pre-existing documents may deserve less protection than testimony that would not have been given absent a protective order:

> The reliance of a private party upon protection of pre-existing documents from disclosure to the Government would normally be more difficult to justify than that of a witness who would, absent the protective order, have invoked his privilege and given no testimony at all.

*Id.* 297 n. 8. By analogy, given that the testimony and documents at issue here were voluntarily given to respondents before any protective order had been sought or entered, the discovery material is entitled to less protection than it otherwise might deserve. *See, Parkway Gallery Furniture v. Kittinger/Pa. House Group, Inc.,* 121 F.R.D. 264, 268 (M.D.N.C.1988). *Compare Minpeco S.A. v. Conticommodity Servs., Inc.,* 832 F.2d 739, 743 (2d Cir. 1987) (modification of protective order denied because of prior reliance upon the protective order).

### B. Public Interest in Disclosure of Discovery Materials

There is a dichotomy between judicial decisions that view discovery as a largely private activity, and those that view it as a public activity. Although discovery proceedings were not open to the public at common law, are generally conducted in private, and are not "a traditionally public source of information," *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 2208, 81 L.Ed.2d 17 (1984), the Second Cir-

cumstances.

cuit has held that there is a statutory basis for affording the public access to discovery materials "whenever possible." *In re Agent Orange Product Liability Litigation*, 821 F.2d 139, 146 (2d Cir.1987). The Second Circuit reviewed the Advisory Committee's note accompanying Fed.R.Civ.P. 5(d), which requires the public filing of all discovery materials unless the court orders otherwise, and pointed out that the Advisory Committee had considered and rejected a rule that filing of discovery materials would be required only if the judge ordered their filing. The Advisory Committee's rationale was that these materials "are sometimes of interest to those who may have no access to them except by a requirement of filing, such as members of a class, litigants similarly situated, or the public generally. Fed.R.Civ.P. 5(d) Advisory Committee note. The Second Circuit held that Rule 5(d) is not a mere housekeeping rule, but rather "embodies the Committee's concern that class action litigants and *the general public* be afforded access to discovery materials whenever possible." *Id.* at 146 (emphasis added). The Second Circuit assumes that discovery cannot be shielded from public view without a showing of good cause. *Id.* at 147–148.

Courts that have leaned toward the view of discovery as a more private activity have assumed that discovery is for the party receiving it, not for strangers to the case. Those taking this view assume that an understanding among counsel is enough to avoid public access to discovery, and do not require a "good cause" showing to achieve confidentiality. *See GAF Corp. v. Eastman Kodak Co.*, 415 F.Supp. 129 (S.D.N.Y.1976) (denying GAF permission to turn over to the Department of Justice Antitrust Division (1) two documents subject to a confidentiality order, and (2) 50 documents *not* subject to a confidentiality order, but as to which counsel had agreed, through "discussions among counsel" that they were to be used solely for the purpose of that litigation).

A few decisions reflect a concern that could be implicated in this case—an unease with permitting a government with "awesome powers" to exploit the fruits of private litigation and thereby interfere with litigants' expectations of privacy. *See Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir.1979) (quoting *GAF Corp. v. Eastman Kodak Co.*, 415 F.Supp. 129, 132 (S.D.N.Y.1976)). In each of these cases, however, the protective order was in place when the discovery was taken, creating far more of an expectation of privacy than here, where no order was in existence when the discovery was made. Furthermore, the facts in this case differ from those in *GAF* in two respects. First, here the contract between Blue Cross and the government agency policing compliance with Medicare regulations provides for Blue Cross to be the "cop on the beat," and to inform the government agency of any wrongdoing by recipients. Although this policing function is performed by a different arm of Blue Cross than was involved in this lawsuit, that fact does not negate the first difference between this case and *GAF*—here, it is clear that the government expected to rely on a private organization to help it root out fraud. Second, the current "downsizing" of government in light of budgetary constraints suggests that government investigative powers in general may not be as "awesome" as they were in 1976, when *GAF* was decided.

In view of the Second Circuit's decision in *Agent Orange*, the court will assume here that there is a presumption that discovery materials should be publicly available whenever possible, *i.e.*, absent a showing of good cause for shielding them from view.

A slightly different, but related, consideration is whether there is a public interest in the particular discovery materials at issue, and whether countervailing privacy interests warrant nondisclosure. In the *Agent Orange* case, for example, the Second Circuit noted that "access is particularly appropriate when the subject matter of the litigation is of especial public interest, which certainly is true of the Agent Orange litigation." *Agent Orange* at 146. In contrast, where disclosure of information would invade protected privacy interests, *e.g.*, by disclosing the identities of donors

to a religious organization and the amounts of their donations, disclosure is inappropriate, even if there is a public interest in knowing more about the religious organization. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

Plaintiffs argue that the court may modify a protective order only if it was improvidently granted or if there exists some extraordinary circumstance or compelling need, citing *Martindell.* Whether this statement represents current law after *Agent Orange* is open to question, but the court does not need to reach that issue. The *Martindell* standard was formulated for a situation in which the producing party had relied upon an existing confidentiality order in making discovery; as is discussed *supra,* such is not the case here. The court holds that where discovery items are initially produced with no request for confidentiality, and are later made subject to a confidentiality order because their disclosure "can be used for purposes of harrassment" (March 29, 1988 Protective Order), the court may reconsider its order at any time if changed circumstances prevent the producing party from showing that harassment is likely enough that justice requires protection.

The court first considers whether the Protective Order was improvidently granted. It could be viewed as improvidently granted, when tested by the principles enunciated in *Agent Orange* and the practices urged there, in that (1) it shields documents from view without the court having made a document by document determination that there exists good cause to protect each document from disclosure, and (2) it is based on a finding that the protected information "can be used for purposes of harassment [*sic* ]" (March 29, 1988 Prot. Order, p. 1), rather than a determination that there is some reasonable likelihood that use of the information *will* be used for purposes of harassment. This latter distinction is important here because the plaintiffs' and intervenors' premise that disclosure will lead to harassment is inconsistent with their firm statements that the activities in question have been approved by Medicare and are easily demonstrated to be completely lawful. If the court accepts plaintiffs' and intervenors' claims of how easy it is to demonstrate the innocence of the activities in question, it is hard to see how the harassment that defendants claim will occur (in the form of unfair audits by Medicare or Blue Cross) could result from disclosing them.

The court believes, however, that the Protective Order can be viewed as providently granted, if it is interpreted as an order designed as a temporary measure, to facilitate discovery by protecting documents from immediate disclosure, without requiring a showing of good cause, but contemplating a subsequent lifting of the order in appropriate circumstances if the proponents of confidentiality fail to continue to show good cause for protection. Although the order here, unlike the order in *Agent Orange,* does not specify that it is "temporary," it does specify that the "order is entered without prejudice to the right to any party or non-party to apply to the Court at any time ... to relax or rescind the restrictions of this Order when convenience or necessity requires." Because the order contains other paragraphs providing for disclosing protected information at depositions and at trial, it is unclear what the Magistrate Judge intended to cover by the words "convenience or necessity." In view of the fact that the Magistrate Judge had not made the required document-by-document determination of "good cause" for protection, it is reasonable to interpret those words liberally, and to assume that any demonstration of a good reason for divulging information can trigger the need for the court to then assess whether the proponent of confidentiality can make a showing of good cause for protection.

In considering whether respondents have met their burden of showing, on an individualized basis, that "justice requires" continued protection of this pre-confidentiality order discovery, the court must weigh the

public interest in curbing any wrongdoing[2] in the publicly-funded Medicare program against the claims of hospitals and radiologists to be free of unreasonable annoyance and harassment.

Rule 26(c) provides that courts may enter any order that justice requires to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c). However, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone v. Liggett Gp., Inc.*, 785 F.2d 1108, 1121 (3rd Cir.1986). In addition, the harm must be significant, "not a mere trifle." *Id.*

Blue Cross argues that the likelihood of harassment is irrelevant after litigation has ended, when there is no longer any threat to the integrity and orderly conduct of litigation before that judge, and that the court lacks jurisdiction to consider how the materials discovered in litigation might be used later, extrajudicially. Although this argument has some appeal, I believe it takes too narrow a view of the court's role in protecting the integrity of the judicial process. The court has an interest not just in the orderly conduct of litigation, but also in ensuring that information obtained through court compulsion is not used abusively. *Cf., Seattle Times*, 104 S.Ct. at 2209 (courts can prevent abuses of their own processes, where litigants obtain information that is both irrelevant and that would be damaging if released). To take an extreme example, if in the *Seattle Times* case plaintiff's private religious practices were the subject of compelled discovery in a defamation suit, and at the end of suit the defendant newspaper sought to lift the protective order to use the confidential information in an article ridiculing plaintiff's religious practices, in retaliation for plaintiff's having sued defendant, I have no doubt that the court could rely upon its inherent power to prevent abusive use of materials the discovery of which was judicially compelled. The court will thus assume only for purposes of this decision, and without making any finding on the matter, that respondents are correct in speculating that one of movant's motives here may be to teach radiologists not to sue respondent in the future.

The court thus turns to an assessment of the specific harassment claimed here. Plaintiffs and intervenors make generalized claims of harm, typified by those made by the seven hospitals represented by the Wood, Lucksinger & Epstein law firm. These hospitals claim that they "will be subject to an endless stream of harassment, annoyance, undue oppression, and burden" (Mem. in Opp. to Def.'s Appeal from the Entry of a Protective Order at 26). The only specification of the harm they fear is that revelation of the discovery materials may be used "to foment harassing audits and other investigations by Medicare." *Id.* at 4. Given these respondents' claims that the Social Security Act "explicitly authorizes" the practices in question (*id.* at 21) and that regulations and directives make this clear as well (*id.*), respondents have not demonstrated why the court should accept their argument that when this information is revealed to Medicare, Medicare will launch "harassing audits and other investigations." The court finds that plaintiffs and respondents have failed to demonstrate that they have a privacy interest in shielding their compensation-related arrangements from Medicare and Blue Cross.

Furthermore, there is a public interest in protecting public funds from being dissipated in fraud. To withhold from scrutiny by Medicare and Blue Cross information regarding allegedly fraudulent activities would not further the public interest.

## CONCLUSION

For the reasons stated, the court modifies the Confidentiality Order to permit defendant to disclose documents and testimony given before any Protective Order was in place. The disclosure may be made only

---

2. Respondents have argued vigorously that they have not engaged in wrongdoing. At the same time, they have argued that revelation of the discovery in question to Medicare officials will subject respondents to expensive and time-consuming audits.

to the HCFA or to Blue Cross personnel involved in the performance of defendant's Medicare functions.

The court hereby stays this order for ten days in order to permit respondents to consider whether they wish to appeal from this decision.

SO ORDERED.