Fernande **BODNER**, et al., on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Banque **PARIBAS**, et al., Defendants.

Anne Marie Benisti, et al., etc., Plaintiffs,

v.

Banque Paribas, et al., Defendants.

Nos. CV 97–7433 (SJ) (MDG), CV 98–7851 (SJ) (MDG).

United States District Court, E.D. New York.

Dec. 21, 2000.

---

Curtis V. Trinko, Law Offices of Curtis V. Trinko, New York City, Kenneth F. McCallion, Goodkind, Labaton, Rudoff & Sucharow, L.L.P., New York City, Thomas A. Holman, Starr & Holman, L.L.P., New York City, Michael D. Hausfeld, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, Roy H. Carlin, New York City, Deborah M. Sturman, Los Angeles, CA, Melvyn I. Weiss, Milberg, Weiss, Bershad, Hynes & Lerach, L.L.P., New York City, Robert L. Lieff, Elizabeth J. Cabraser, Morris A. Ratner, Robert J. Nelson, Lieff, Cabraser, Heimann & Bernstein, LLP, New York City, Arthur Miller, Cambridge, MA, Irwin Levin, Richard Shevitz, Cohen & Malad, P.C., Indianapolis, IN, Harriet Tamen, New York City, for Fernande Bodner, No. CV 97–7433.

Kenneth F. McCallion, Goodkind, Labaton, Rudoff & Sucharow, L.L.P., New York City, Michael D. Hausfeld, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, Melvyn I. Weiss, Milberg, Weiss, Bershad, Hynes & Lerach, L.L.P., New York City, Robert L. Lieff, Elizabeth J. Cabraser, Morris A. Ratner, Robert J. Nelson, Lieff, Cabraser, Heimann & Bernstein, LLP, New York City, Irwin Levin, Richard Shevitz, Cohen & Malad, P.C., Indianapolis, IN, for Anna Zajdenberg, No. CV 97–7433.

Kenneth F. McCallion, Goodkind, Labaton, Rudoff & Sucharow, L.L.P., New York City,

for Margaret Bleier, Rose Avidor, George Banet, Conrad Bieber, Roger Gordon, John Kahn, Claire Winter, No. CV 97–7433, Pierre-Louis Cahen, Fabrice Cormand, Samuel Chymisz, Claude Feigelman, Ernest-Nessim Germon, Bernard Gurfinkiel, William Hagege, Adele Infeld, Jannushka Jakoubovitch, Michael Japkowicz, Elisabeth Malamet, Violette Marty, Marc Ricouvier, Chaim Rudel, Erica Turek, Jacqueline Yashar, No. CV 98–7851.

Frederick T. Davis, Shearman & Sterling, New York City, for Banque Paribas, Nos. CV 97–7433, 98–7851, Credit Lyonnais, Societe Generale, Natexis, Credit Agricole Indosuez, No. CV 97–7433.

Floyd Abrams, Cahill Gordon & Reindel, New York City, for Barclay's Bank, No. CV 97–7433. J.P. Morgan & Co., No. CV 98–7851.

Owen C. Pell, Karen M. Asner, White & Case, LLP, New York City, for Credit Commerical De France, Nos. CV 97–7433, 98–7851.

Elizabeth J. Cabraser, Morris A. Ratner, Robert J. Nelson, Lieff, Cabraser, Heimann & Bernstein, L.L.P., New York City, Irwin Levin, Richard Shevitz, Cohen & Malad, Indianapolis, IN, for Henry Mono, Haim Levendel, Simon Jeruchim, Cecil Kaufer, Jacqueline Donnenfeld, Annette Finger, No. CV 97–7433.

Robert T. Stephenson, Chemical Bank Legal Department, New York City, for Chase Manhattan Bank, No. CV 98–7851.

### ORDER

GO, United States Magistrate Judge.

Defendants Banque Paribas, Credit Lyonnais, Societe Generale, Credit Agricole Indosuez, Natexis, Banque Nationale de Paris, Chase Manhattan Bank and Credit Commercial de France (collectively, "defendants") have moved for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. This Order further elaborates the reasons underlying this Court's rulings on the record at the hearing on this motion on December 7, 2000 ("Dec. 7 Tr.") in denying the motions. This Order is also intended to give the parties guidance as to the factors that this Court will consider in future discovery disputes in order to obviate the need for repetitive motion practice arising from issues related to those considered here.

This discovery dispute arises out of the litigations seeking compensation for the defendants' alleged wrongful taking from and failure to return money and other assets to Jews in France during World War II and thereafter. This Order assumes familiarity with the allegations of the complaints, which are discussed in more depth in Judge Johnson's Memorandum and Order dated August 31, 2000 denying defendants' motion to dismiss ("August 31 Order"), and with the history of discovery in the actions.

### DISCUSSION

Fed.R.Civ.P. 26(c) provides in relevant part:

Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense....

A party seeking a protective order under Rule 26(c) has the burden of establishing "good cause." *In re "Agent Orange" Prod. Liab. Litigation,* 821 F.2d 139, 145 (2d Cir.), cert denied, 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987). In addition, a party seeking the application of the Hague Convention procedures to discovery, rather than the Federal Rules, as the defendants do here, bears the burden of persuasion. *See, e.g., Valois of America, Inc. v. Risdon Corp.,* 183 F.R.D. 344, 346 (D.Conn.1997).

Defendants claim that: (1) because no class has yet been certified, discovery must be stayed, or limited solely to the claims of the named plaintiffs; (2) discovery in this action should proceed pursuant to the requirements of the Hague Convention,[1] rather

---

**1.** The Hague Convention is the popular name for the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, opened

than the Federal Rules; (3) various French laws, including France's blocking statute and bank secrecy laws, prohibit the discovery sought by plaintiffs;[2] (4) the discovery sought by plaintiffs consists of defendants' selection of public documents, from various archival sources, and that defendants' attorneys' selection of such documents is entitled to protection as attorney work-product.[3]

■■■ Defendants first contend that, in light of the fact that class certification has not yet been considered by the Court, discovery should be stayed or limited at present to issues relating to the named plaintiffs, rather than the merits of the actions. While defendants may be correct that, in many cases, bifurcating "class" from "merits" discovery is appropriate, there is no blanket requirement that discovery be structured in this manner. Whether merits discovery should await determination of class certification depends of the particular circumstances of each case. As explained in the Federal Judicial Center's *Manual for Complex Litigation 3rd*, at 30.12 (1995):

> Discovery relating to class issues may overlap substantially with merits discovery. A key question in class certification may be the similarity or dissimilarity between the claims of the representative parties and those of the class members—an inquiry that may require discovery on the merits and development of basic issues.

*See also, e.g., Chateau de Ville Productions, Inc. v. Tams–Witmark Music Library, Inc.*, 586 F.2d 962, 966 (2d Cir.1978) ("Failure to allow discovery, where there are substantial factual issues relevant to certification of the class, makes it impossible for the party seeking discovery to make an adequate presenta-

tion either in its memoranda of law or at the hearing on the motion if one is so held"); *National Organization for Women, Farmington Valley Chapter v. Sperry Rand Corp.*, 88 F.R.D. 272, 277 (D.Conn.1980) (same); *Gray v. First Winthrop. Corp.*, 133 F.R.D. 39, 41 (N.D.Cal.1990) (granting pre-certification merits discovery because "[d]iscovery relating to class certification is closely enmeshed with merits discovery, and in fact cannot be meaningfully developed without inquiry into basic issues of the litigation").

As recognized by Judge Johnson, there is limited knowledge about the conduct of the various banks during the applicable time periods, and about the whereabouts of the assets of the potential class members. *See* August 31 Order at 16. Thus, discovery on the merits, reasonably structured, is essential to determining whether class certification is appropriate, and what classes (and/or subclasses) may properly be certified. *Id.* Indeed, counsel for defendants have themselves highlighted the significance of the factual issues underlying the question of whether class certification is appropriate here. As explained by counsel at the December 7 hearing, "one of [plaintiffs'] key allegations was that assets were frozen before a certain date, when certain laws kicked in ... there's an awful lot of variance as to people who had access to complete restitution after the war and obtained it ... I think there are any number of issues that will be a factor." Dec. 7 Tr. at 33–34.[4] Very simply, the question of what happened to potential class members' assets, and when, and which banks were involved, and what they did with those assets, will likely have substantial relevance to the determination of whether plaintiffs satis-

---

for signature, Mar. 18, 1970 and entered into force between the United States and France on Oct. 6, 1974. 23 U.S.T. 2555, T.I.A.S. No. 7444 (codified at 28 U.S.C. § 1781).

**2.** Specifically, defendants identify the following laws of France as an impediment to the discovery sought by plaintiffs in this matter: (a) the "French Blocking Statute," (French Law No. 68–678, dated July 26, 1968, as modified by French Law No. 80–538, dated July 16, 1980); (b) the "French Privacy Law," (French Law No. 78–17, dated January 6, 1978 and Articles 226–16 *et seq.* of the French Criminal Code); (c) the "French Bank Secrecy Law," French Law No. 84–46, and Articles 226–13 and 226–14 of the French Crimi-

nal Code; and (d) Article 9 of the French Civil Code.

**3.** This issue is not addressed in this Order, but will be considered as appropriate at a later stage in discovery.

**4.** The transcript of the December 7 hearing ascribes this statement along with several others to Owen Pell, counsel for Chase Manhattan Bank, *inter alia.* However, based on the Court's recollection, this statement, along with the statement quoted from page 29 of the transcript, was more likely made by Frederick T. Davis, counsel for BNP Paribas, Credit Lyonnais and other French bank defendants in this action.

fy the requirements of typicality and commonality in order to be suitable class representatives. However, as discussed further below, to hold that discovery should proceed is not to say that any such discovery should not be appropriately narrowed.

■ The defendants who are banks organized under French law also argue that plaintiffs should be required to conduct discovery against them only in France utilizing the procedures available under the Hague Convention. In support of this contention, defendants misconstrue the Supreme Court's holding in *Societe Nationale Industrielle Aerospatiale v. United States District Court*, 482 U.S. 522, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987) (*"Aerospatiale "*), which involved personal injury lawsuits brought against the French manufacturers of aircraft that had crashed. As here, the French companies filed a motion for protective order that discovery be had only under the Hague Convention, and not the Federal Rules of Civil Procedure. Contrary to defendants' argument, the Supreme Court expressly held that the Hague Convention did not preempt the Federal Rules with respect to discovery from foreign litigants. *Id.* at 539–40, 107 S.Ct. 2542. Instead, the Court viewed the procedures set forth in the Hague Convention as a supplementary measure: "[I]t appears clear to us that the *optional* [Hague] Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the [Hague] Convention." *Id.* at 541, 107 S.Ct. 2542 (emphasis added).

The Supreme Court further "decline[d] to hold as a blanket matter that [international] comity requires resort to Hague ... Convention procedures without prior scrutiny in each case of the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective." *Id.* at 544, 107 S.Ct. 2542 (footnote omitted). Rather, the Court set forth the considerations that the district courts should keep in mind in determining whether the Hague Convention should apply:

> Some discovery procedures are much more "intrusive" than others.... Even if a court might be persuaded that a particular document request was too burdensome or too "intrusive" to be granted in full,

with or without an appropriate protective order, it might well refuse to insist upon the use of [Hague] Convention procedures before requiring responses to simple interrogatories or requests for admissions. The exact line between reasonableness and unreasonableness in each case must be drawn by the trial court, based on its knowledge of the case and of the claims and interests of the parties and the governments whose statutes and policies they invoke.

*Id.* at 545–46, 107 S.Ct. 2542 (footnote omitted).

The Court in *Aerospatiale* also specifically considered the effect of the same French Blocking Statute at issue here and found the existence of such a statute is not a basis for disallowing discovery, explaining that:

> [I]t is well settled that such statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate the statute. It is clear that American courts are not required to adhere blindly to the directive of such a statute. Indeed, the language of the statute, if taken literally, would appear to represent an extraordinary exercise of legislative jurisdiction by the Republic of France over a United States district judge, forbidding him or her to order any discovery from a party of French nationality ... the blocking statute thus is relevant to the court's particularized comity analysis only to the extent that its terms and its enforcement identify the nature of the sovereign interests in nondisclosure of specific kinds of material ...

*Id.* at 544 n. 29, 107 S.Ct. 2542.

■ Since *Aerospatiale*, the courts have further addressed the appropriate scope and mode of discovery where the discovery sought is ostensibly or potentially barred by a foreign statute. In *Minpeco, S.A. v. Conticommodity Services, Inc.*, 116 F.R.D. 517 (S.D.N.Y.1987), decided two weeks after *Aerospatiale*, plaintiff sought discovery of information from a bank protected by the Swiss bank secrecy law. The court there identified four factors as most important to the determination to the reasonableness of the mov-

ant's foreign discovery request: (1) the competing interests of the nations whose laws are in conflict; (2) the hardship of compliance on the party from whom discovery is sought; (3) the importance to the litigation of the information and documents requested; and (4) the good faith of the party resisting discovery. *Id.* at 523. Under this standard, Judge Lasker, in an antitrust case, declined to compel production of documents where he found that Switzerland had a substantial interest in protection of bank client account information. The court also found there was a significant risk of prosecution under accompanying criminal statutes, which posed a hardship to the party from whom discovery sought. In particular, the court distinguished the Swiss law from France's Blocking Statute considered in *Aerospatiale* and *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum,* 105 F.R.D. 16, 29 (S.D.N.Y.1984), where there was no significant risk of prosecution. *Id.* at 526. Judge Lasker also placed emphasis on the fact that the entity from whom discovery was sought was a non-party witness and that the discovery sought was extensive but unlikely to provide much material of significant value to the litigation. *Id.* at 527–28.

In *First American Corp. v. Price Waterhouse LLP,* 154 F.3d 16 (2d Cir.1998), the Court of Appeals for the Second Circuit adopted the four-part test set out in *Minpeco.* In that case, the Court considered whether the Federal Rules should apply to a U.K. corporation which was not a party to the litigation, and whether the U.K.'s confidentiality laws meant that the discovery could not proceed. Finding the restriction in the British confidentiality laws not to be absolute, the court held that the American interests in discovery in this lawsuit outweighed the British interest in confidentiality. *Id.* at 21–22. In addition, the Court relied on the fact that the Hague Convention did not present a meaningful alternative avenue of discovery for the critical documents sought because it required parties, in that case, to separately describe each document sought. *Id.* at 23.

Applying the dictates of *Aerospatiale* and its progeny, this Court finds that neither requiring resort to the Hague Convention, nor denying plaintiffs all discovery on the basis of the various laws of France cited by defendants, is appropriate. It is beyond peradventure that the United States has a significant interest in assuring restitution to Holocaust victims and their families. *See* August 31 Order at 32–33 (recognizing "public interest" in resolution of claims); *id.* at 22–23 (holding that, under comity analysis, no true conflict existed between remedial purpose of present actions, and laws of France).

■ The French laws cited by defendants do not change this analysis, or present a compelling, competing French national interest. As held by numerous courts, the French Blocking Statute does not subject defendants to a realistic risk of prosecution, and cannot be construed as a law intended to universally govern the conduct of litigation within the jurisdiction of a United States court. Thus, applying *Aerospatiale* and *Minpeco,* other courts have uniformly declined to give effect to the French Blocking Statute, or to hold that the existence of the statute requires that discovery of French defendants take place under the Hague Convention. *See, e.g., Compagnie Francaise d'Assurance Pour le Commerce,* 105 F.R.D. at 30 (court declined to apply the French Blocking Statute, or apply the Hague Convention, explaining that: "the legislative history of the statute gives strong indications that it was never expected to nor intended to be enforced against French subjects but was intended rather to provide them with tactical weapons and bargaining chips in foreign courts") (citations omitted); *Adidas Ltd. v. SS Seatrain Bennington,* 1984 WL 423 (S.D.N.Y.1984) (court declined to apply the French Blocking Statute in light of interests it was intended to serve); *Valois of America v. Risdon Corp.* 183 F.R.D. 344 (D.Conn. 1997) (declining to apply French Blocking Statute). *See also Alfadda v. Fenn,* 1993 WL 33445 (S.D.N.Y.1993) (examining French Bank Secrecy Law, and determining it would not obstruct discovery where bank were itself a party to the litigation, and court had fashioned appropriate confidentiality order).

Moreover, in light of the limited discovery ordered by this Court at this time, centering

on production of documents produced to the Mattéoli Commission, and available to the public from that Commission, there is little purpose to be served in this case in applying the Blocking Statute or any of the other French laws cited by defendants. Even if they were applied, those laws would not prevent the plaintiffs from receiving information sought on this motion—the question is thus one of the form and efficiency of the means of receiving the information sought, rather than of the availability of that information.[5]

Similarly, the French Privacy Law cited by defendants does not appear to be directed at the present circumstances; rather, that law was intended to prevent recurrence of past bigotry and anti-Semitic and racist acts that are the very events that plaintiffs here seek to investigate. Permitting discovery would not undermine the purposes of the Act, while denying plaintiffs discovery would effectively prevent them from pursuing this action. Along the same lines, the French Bank Secrecy Law, also relied on by plaintiffs, does not, on any meaningful examination, appear to control the facts of the present litigation. As explained in *Alfadda v. Fenn,* 1993 WL 33445 at *3, that statute is not intended to apply to litigation in which the bank is a party.[6]

Nor does the discovery here pose a significant hardship to defendants. To begin with, as set out above, discovery has, at this time, been significantly narrowed, and will continue only under the close supervision of the Court; under these circumstances, the burdens on the foreign litigants are not and will not be overwhelming relative to the particular interests served by that discovery. In addition, the use of an appropriate protective order should address the confidentiality concerns of defendants (and any concerns expressed by French law) with regard to the materials produced.

Finally, the need for information and time pressure on this litigation, pressures caused, in particular, by the fact that potential class members are aged and in some cases infirm, indicate that the application of the Federal Rules is appropriate. Requiring resort to the Hague Convention would consume precious time, and needlessly delay the resolution of this proceeding, particularly should there be continuing tactical measures taken by defendants to avoid discovery sought under the Convention. In short, discovery here should be governed by the Federal Rules, because they are the most effective method of discovery available. *See Aerospatiale,* 482 U.S. at 542–44, 107 S.Ct. 2542 (Hague procedures need not be used where they would be "unduly time consuming and expensive, as well as less certain to produce needed evidence than direct use of the Federal Rules"); *First American Corporation v. Price Waterhouse LLP,* 154 F.3d 16, 23 (resort to Hague convention procedures not appropriate where measures available would not necessarily supply critical information sought).

Nonetheless, this Court recognizes and appreciates the unique concerns and interests of the French Government in these cases, as expressed both in its earlier submissions to this Court and in the recent letter of Assistant General Manager Jean–François Dobelle in the Ministry of Foreign Affairs. *See* Exh. A to Decl. of Frederick T. Davis dated November 30, 2000. However, the goals of the plaintiffs in this case clearly are consistent with the objectives of the French Government, as evidenced by that government's

---

5. As explained by defendants' counsel at the December 7 conference:

    This is public knowledge. The Prime Minister of France issued a decree in October, 2000 that says that groups of people who are representing Holocaust victims can be specifically apply to the French government to be allowed access to the names developed by the [Matteoli] Commission.

    Dec. 7 Tr. at 29–30.

6. As explained by defendants' expert's affidavit:

    [A] bank is not entitled to invoke professional secrecy in the context of a case against its client: the civil courts have the power to order that the bank produce documents when a request for communication is made against the bank, not in its third-part capacity, but rather as a party to the action brought against it by the beneficiaries of the principle of banking secrecy rule.

    Decl. of Herve Synet at 4. As such, the principal purpose of the law appears to be to protect client confidences, rather than bank procedures; accordingly, permitting discovery here would not significantly conflict with the purpose of these laws.

laudable efforts in establishing both the Mattéoli and Drai Commissions and undertaking to make restitution to Jews in France whose assets were subject to "spoilation" during World War II.

Moreover, as noted at the December 7 hearing, this Court intends to follow the directive of the Supreme Court in *Aerospatiale* as to discovery involving foreign defendants:

American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper use of discovery requests. When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses . . .

*Id.* at 545–46, 107 S.Ct. 2542 (footnote omitted). Close supervision of discovery in this case should address any additional concerns and needs of the defendants that may arise from plaintiffs' discovery requests.

### CONCLUSION

For the reasons set out above, the motions for protective orders are DENIED. Discovery is ordered consistent with the directions of the Court at the December 7, 2000 conference.

SO ORDERED.