The MERCHANTS BANK, Appellant,

v.

Pasquale and Vatsala VESCIO, Appellees.

No. 2:98–CV–134.

United States District Court, D. Vermont.

June 5, 1998.

Robert Alan Pinel, Miller, Eggleston & Cramer, Ltd., Burlington, VT, John H. Henn, Foley, Hoag & Eliot, Boston, MA, for Merchants Bank.

Dennis James Johnson, Law Offices of Dennis Johnson, South Burlington, VT, for Pasquale J. Vescio, Vatsala Vescio and Leon J. Savoie.

Melissa A.D. Ranaldo, Asst. U.S. Atty., Office of United States Attorney, District of Vermont, Burlington, VT, for Federal Deposit Insurance Corporation.

Ann Marie Metayer, VT Dept. of Banking, Insurance, Securities and Health Care Ad., Montpelier, VT, for State of Vermont, Commissioner of Department of Banking, Insurance, Securities and Health Care Administration.

Melissa A.D. Ranaldo, Asst. U.S. Atty., Office of United States Attorney, District of Vermont, Burlington, VT, for Federal Reserve System, Board of Governors.

## OPINION AND ORDER

SESSIONS, District Judge.

The Merchants Bank ("Bank"), Counterclaim Defendant, appeals from an order of the Bankruptcy Court for the District of Vermont (Conrad, J.) filed May 1, 1998, which modified the confidentiality order governing use of Bank and agency documents. For the reasons that follow, the order is modified and affirmed.

## I. *Factual Background*

This case returns to this Court on an appeal from a discovery order of the Bankruptcy Court. The Vescios are Debtors in a Chapter 11 action, and Counterclaim Plaintiffs in the Bank's foreclosure actions which were removed to Bankruptcy Court. The Vescios allege nine counterclaims, including breach of contract and fraud. Trial by court of this case is ongoing and will resume on June 8, 1998.

Discovery disputes have marred this proceeding. On remand from this Court, *see Merchants Bank v. Vescio,* 205 B.R. 37 (D.Vt.1997), the Bankruptcy Court examined Bank documents requested by the Vescios concerning investigations by the Federal Reserve and the FDIC for bank examination privilege. No privilege was found, but the Bankruptcy Court approved a stipulated confidentiality agreement protecting Bank and agency documents on July 3, 1997. The confidentiality order protected "[a]ll documents produced from the Bank to the Vescios heretofore or hereafter disclosed during the discovery process" from being "disclosed or disseminated to any persons except the parties, their counsel, their respective experts." (Paper 5, Ex. B–2 at 2–3.) Dissemination to anyone else was to constitute contempt of the Bankruptcy Court, and the order contained no mechanism for challenging the confidentiality of individual documents.

On May 1, 1998, the Bankruptcy Court filed an order altering the scope of these confidentiality provisions. Two sets of nonparty litigants in related actions took interest in the Vescios' discovered materials: defendants in a consolidated Windsor Superior Court action, *Merchants Bank v. C.R. Davidson Co., Inc., et al.,* Docket No. 644–11–95–WnCv, and Leon J. Savoie, plaintiff in a federal proceeding in this District, *Savoie et al. v. Merchants Bank, et al.,* No. 1:94–CV–312.

Savoie took particular interest in inspecting the Vescios' discovery because of his belief that the Bank withheld discovery in his case. That action is currently before the Second Circuit. Savoie won a claim that his filing of a class action lawsuit against the Bank substantially caused the Bank to make

a settlement payment to the injured class of customers (the Bank paid the customers directly instead of settling the suit). This causation claim entitled Savoie and his counsel to an award. Savoie lost a claim that the Bank defended itself against the causation claim in bad faith. According to Savoie, the Vescios obtained documents that the Bank claimed did not exist in his case. This fact if proven would bolster Savoie's case in the bad faith litigation.

The Bankruptcy Court's May 1 Order permitted the Vescios to disclose Bank documents involving the FDIC and the Federal Reserve to these non-party litigants subject to the terms and conditions of this proceeding, including the confidentiality order. Non-agency related Bank materials could be disclosed to the non-party litigants subject to the outstanding orders in their own actions, but not the confidentiality order in this case. The Bankruptcy Court found that the consent order in *C.R. Davidson* offered as much or more protection to the Bank than its counterpart in *Vescio*.

The Bank protested against modifying the confidentiality order, and it brought an emergency motion for leave to appeal and for stay of the May 1 Order to this Court. Papers were filed by both parties, Savoie, the FDIC and Federal Reserve, and the Vermont Department of Banking, Insurance, Securities and Health Care Administration ("Vermont Department of Banking"). This Court conducted a hearing on May 12, 1998, at which time it granted leave to appeal and stayed the May 1 Order pending this appeal.

## II. *Discussion*

### A. *Jurisdiction*

■ As this Court has previously noted, appeals of civil discovery orders are rarely heard. *Vescio*, 205 B.R. at 40. Nonetheless, this recasting of the confidentiality order is appealable as it meets the criteria of the collateral order doctrine, originally set forth in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). According to this doctrine, an order to be immediately appealable "must conclusively determine the disputed question,

resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).

This appeal may be brought now pursuant to the collateral order doctrine. The May 1 Order settled the issue of confidentiality of Bank documents. The issue of whether disclosure to non-party litigants will be allowed is clearly important to the parties and interested non-parties. The issue of confidentiality is entirely separate from the merits of the Vescios' case. Finally, the May 1 Order is not effectively reviewable following a final judgment, as the effects of disclosure will not be reversible at that point. Therefore, the Court has jurisdiction to hear the Bank's appeal.

■ This Court reviews the Bankruptcy Court's Order *de novo* as to issues of law; findings of fact will not be overturned unless clearly erroneous. *Vescio*, 205 B.R. at 40.

### B. *Standard for Modification of a Protective Order*

■ A trial court may in its discretion modify a protective order. *In Re "Agent Orange" Product Liability Litigation*, 821 F.2d 139, 147 (2d Cir.1987). The Second Circuit has issued standards for modifying a protective order given certain contexts. Two lines of decisions have been discerned from these cases. *See Bayer Ag and Miles, Inc. v. Barr Laboratories, Inc.*, 162 F.R.D. 456, 460 (S.D.N.Y.1995). In cases involving non-party government intervention, the Circuit generally requires the governmental entity to show extraordinary circumstances or a compelling need, or improvidence in the granting of the protective order. *See, e.g., Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir.1979). In cases where a non-party seeks information of great public interest, the party opposing the motion generally bears the burden of showing good cause for maintaining confidentiality. *Agent Orange*, 821 F.2d at 147–48; *Westchester Radiological Ass'n P.C. v. Blue Cross/Blue Shield of Greater New York, Inc.*, 138 F.R.D. 33, 36

(S.D.N.Y.1991) (public interest should be weighed against privacy interests of parties).

The Southern District of New York, in *Bayer,* conceived a new standard for cases in which a private non-party movant sought modification of a protective order for private reasons. *Bayer,* 162 F.R.D. at 462–63. Drawing on two other District Court decisions, the court employed a balancing test involving four factors. First, good cause must be shown. If good cause for the protective order was established when it was introduced, then the movant bears the burden of showing good cause for modification. Second, the nature of the order must be analyzed in terms of its scope and whether it was agreed to or court imposed. Third, the foreseeability of the need for modification at the time of the order must be measured. Fourth, the court should weigh the extent to which the party opposing modification relied on the protective order in turning over discovery materials. *Id.* at 463, 465–67. While *Bayer* dealt with a party moving for modification, this test has been applied to non-parties as well. *See Crothers v. Pilgrim Mortgage Corp.,* No. 95 CIV. 4681(SAS), 1997 WL 570583, *5 (S.D.N.Y. Sept. 11, 1997); *Bergen Brunswig Corp. v. Ivax Corp.,* No. 97 CIV. 2003(PKL), 1998 WL 113976, *4–5 (S.D.N.Y. March 12, 1998) (relying on another standard but describing how same outcome would result under *Bayer* ).

The Bankruptcy Court endorsed the *Bayer* test in its Order. The Bank argues that this test was misapplied, while the Vescios and Savoie submit that the *Agent Orange* standard is more appropriate. A bank's welfare, the possibility of harm to its customers, and its potential misconduct in litigation, are public interests, but this Court does not find that these interests rise to a level sufficient to impose on the Bank the burden of justifying the order's reinstatement. *Agent Orange,* unlike this case, concerned a mass tort in which scores of lives nationwide were potentially affected. In addition, the thrust of the movement for modification comes from the non-parties' private interest in discovering evidence relevant to their actions against the Bank. As a result, the *Bayer* standard is more appropriate.

Given these facts, the Court believes that a fifth test should be added to the balance: the pendency of other litigation. The *Bayer* court discarded this prong because there was no other pending litigation. *See Bayer,* 162 F.R.D. at 463 n. 10 ("The third ... Hayden factor[ has] no relevance to the present motion. Barr does not seek to ... make information available to litigants in related actions"). Here, however, the pendency of other litigation should be weighed along with the four *Bayer* factors.

### C.  Application of the Bayer Test

While the Court agrees with the Bankruptcy Court that use of the *Bayer* test is appropriate in this case, the Court draws its conclusions of law based on that test independently, as follows.

### 1.  Good Cause

The allocation of burden as to good cause depends in part on the nature of the order involved, and thus some discussion of the second prong is required. The *Bayer* court described three different scopes of protective orders, two of which are relevant here. An umbrella order protects all discovery without any review for good cause to do so. Generally, the party resisting modification will bear the burden of justifying an umbrella order, since it did not have to show good cause at the order's outset. *Bayer,* 162 F.R.D. at 465. A blanket order enables parties to declare and protect "documents that they in good faith believe contain trade secrets or confidential commercial information." *Id.* Often such orders provide for the opposing party to challenge the confidential nature of specific documents. *See, e.g., Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb Inc.,* 122 F.R.D. 433 (S.D.N.Y.1988). Where the party bringing the modification motion stipulated to a blanket order, that party must show good cause for modification. The burden may shift, however, if a nonparty is moving to modify the order. *Bayer,* 162 F.R.D. at 465.

The order in the instant case more closely resembles an umbrella order than a blanket order. Though both parties stipulated to the order, its coverage was all-encompassing and

impervious to challenge. All Bank documents provided before or after the order were protected, and no provision existed for challenging individual documents. Based on the type of order, the burden should fall to the Bank to show good cause for maintaining confidentiality as against the two non-parties.

However, good cause analysis also takes into account whether good cause existed for the initial confidentiality order. *See Bayer*, 162 F.R.D. at 464 (if good cause existed for initial protective order, movant must show good cause to modify). Though the Bankruptcy Court strained to perceive confidentiality issues in the documents it had reviewed, it nonetheless found that the sheer volume of discovery alone justified a protective order. From this viewpoint, the Vescios should have to show good cause for modification.

Even assuming the Vescios bore all of the good cause burden, good cause for modification has been adequately shown. As this Court noted at the May 12, 1998 hearing, serious allegations of withholding discovery and fraud upon the Court are being made by Savoie against the Bank. Given these allegations, which have been brought to the *Savoie* Court's attention through a Fed.R.Civ.P. 60(b) Motion for Relief from Judgment, the need for disclosure to Savoie and other non-party litigants is paramount and outweighs the Bank's need for protection of its internal documents.

This balancing of interests is made bearing in mind the extent of the modification requested. The proposed disclosure may be accomplished by lifting the confidentiality order just high enough to include *Savoie* and *C.R. Davidson* litigants, and no higher. If the terms of the confidentiality order are imposed on these parties, then confidentiality concerns are minimized. Given the importance of the issues raised and the limited amendments to the order, good cause for modification has been shown.

### 2. Nature of the Protective Order

■ As indicated *supra*, the umbrella nature of the original order weighs in favor of modification. Another facet to this second prong, however, considers whether the original order was court imposed or court approved based on the parties' stipulation. That the Vescios stipulated to this order generally weighs against modification, *Bayer*, 162 F.R.D. at 466. Nevertheless, the weight of this fact should be reduced where, as here, the moving party is acting on behalf of non-parties who were not involved in the creation of the stipulated order.

### 3. Foreseeability

The Court next contemplates whether the need for modification was reasonably foreseeable to the parties at the time of the stipulated agreement. The Vescios contend that the Bank should have been able to foresee that its own alleged misconduct in *Savoie* would necessitate modification of the confidentiality order. According to the Bank, the Vescios should have foreseen the opportunity to share discovery with other litigants.

The need for outside litigants to access discovery was not reasonably foreseeable to the Vescios when the order was entered. These non-parties presumably could pursue discovery through their own channels. It could not be reasonably foreseen that allegations of withholding documents would arise in related litigation, necessitating the disclosure of materials in *Vescio*. Savoie, who holds the greatest interest in modification, is a non-party who took no part in the original stipulation and could not have portended his interest in the Vescios' discovery. The need to compare discovered documents, based on allegations of misconduct not reasonably foreseeable when the order was first entered, militates in favor of modification.

### 4. Reliance

The extent of the parties' reliance on the initial protective order must be examined. The Bank, the Federal Reserve and FDIC, and the Vermont Department of Banking have all declared their reliance on the confidentiality order in turning documents over to the Vescios. Their reliance was justified in part by the enormity of the discovery turned over to the Vescios.

However, the massive production by the Bank was also spurred by the Bankruptcy

Court's threat of harsh sanctions. The Bank was compelled to provide this bulk discovery after months of litigation and dispute; it did not willingly turn over these boxes of documents early in the case, in reliance on a general confidentiality order. *See Bayer*, 162 F.R.D. at 467 (nonmovant's reliance significant where nonmovant turned over six million pages of documents under general protective order; nonmovant did not dispute broad requests in reliance on protective order, in order to expedite the case).

The agencies submit that further challenges to the Bankruptcy Court's discovery order were forsaken because the confidentiality order alleviated their concerns. However, the Bank and the interested agencies would still have an order on which to rely if modification were granted. Limited modification would not open discovery to the public or competitors, but only to the two listed non-parties.

### 5. *Pendency of Other Litigation*

█ In *Bayer*, this prong was omitted as there was no other litigation involved. In *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*, 106 F.R.D. 551, 555 (S.D.N.Y.1985), however, the Southern District of New York recognized that where applicable a modification decision should take into account "[t]he pendency of litigation brought by the person or entity on whose behalf modification is sought." Here, related litigation against the Bank in *Savoie* and *C.R. Davidson* favors modification. Commonly modification is performed as a means of avoiding duplicative discovery in related litigation. This factor is important, but the allegations made by Savoie against the Bank heighten the need for disclosure of documents. Savoie's Rule 60(b) motion filed in that case reflects the sincerity of his claims of discovery abuse. *See Hayden*, 106 F.R.D. at 556 (pending litigation shows "commitment" by non-party and thus reduces risk of non-party seeking modification only for harassment purposes).

### D. *Conclusion*

Considering all five of these factors, the balance tips toward modification. The initial confidentiality order was stipulated to and relied upon by the Bank and the agencies. However, good cause has been shown for a limited disclosure, the need for which could not have been reasonably foreseen when the order was first entered. Since the original order was an umbrella order, concerns about harm to the Bank and the agencies from modification are lessened. The pendency of related cases, one of which involves sobering allegations of discovery abuse and bad faith, justifies modifying the confidentiality order.

The Bank argues that by modifying the confidentiality order the Bankruptcy Court awarded discovery in *Savoie* and improperly usurped jurisdiction over *Savoie* from the District Court. This Court disagrees. The Bankruptcy Court's May 1 Order represented a shift in the confidentiality provisions of its own discovery order. Savoie has filed his motion for relief from judgment, which will be heard by the District Court. That tribunal will determine what, if any, extrinsic evidence it will consider in deciding that motion.

The intervention of a third party seeking access to information for the purposes of other litigation is not uncommon. *See Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783–84 (1st Cir.1988) (third parties may challenge protective orders under Rule 24); *Koprowski v. Wistar Institute of Anatomy and Biology*, No. CIV A. 92–CV–1182, 1993 WL 332061, *1 (E.D.Pa. August 19, 1993) (citing cases). This case is out of the ordinary only in that Savoie believes not that access to Bank documents will alleviate the need for discovery in his case, which has already been tried, but that it will prove discovery abuse.

In fact, the modification request and the resulting litigation would probably have been more properly focused had the non-parties moved for permissive intervention pursuant to Fed.R.Civ.P. 24(b). *See Martindell*, 594 F.2d at 294 (though court permitted government non-party to seek modification of protective order informally, Rule 24(b) motion would have been preferable). Much argument has been wasted focusing on tangential issues, in part because the Vescios brought the motion on behalf of the non-parties. The crux of the matter is whether the litigants in

*Savoie* and *C.R. Davidson* should gain access to the Vescios' discovery. Permissive intervention by the non-parties would have made this point more plain to all.

Regardless, based on its application of the appropriate standards and not the colorful characterizations offered by the parties, the non-parties, and the Bankruptcy Court alike, this Court finds that the balance tips in favor of modification. The confidentiality order may be amended without opening the Bank's discovery to the public by holding the *Savoie* and *C.R. Davidson* litigants to the terms of the confidentiality order and any other applicable conditions in this proceeding, as to both Bank and agency documents. This modification to the May 1 Order the Court intends to implement. *See* Fed.R.Bankr.P. 8013 ("On an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree").

## III. *Conclusion*

For the foregoing reasons, the May 1, 1998 Order's ruling permitting the Vescios' disclosure of discovery to litigants in *Savoie* and *C.R. Davidson* is MODIFIED to bind these litigants to the terms and conditions of confidentiality in this proceeding as to all documents, and otherwise the ruling is AFFIRMED.