**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

**New York Stock Exchange, Inc., Third–Party Defendant– Appellant,**

**v.**

THESTREET.COM, Intervenor–
Plaintiff–Appellee,

Richard A. Grasso, Edward A. Kwalwas-
ser, Brian M. McNamara, and Robert
J. McSweeney, Third–Party Defen-
dants,

Oakford Corporation, Edward J. Mueg-
er, Inc., MFS Securities Corp., Oak-
ford Securities, Inc., D'Alessio Securi-
ties, Inc., William Killeen, Thomas W.
Bock, Thomas J. Cavallino, Edward J.
Mueger, Mark R. Savarese, John J.
Savarese, and John R. D'Alessio, De-
fendants,

Bloomberg L.P., Amicus Curiae.

Docket No. 01–6078.

United States Court of Appeals,
Second Circuit.

Argued June 22, 2001.

Decided Nov. 29, 2001.

Debra M. Torres (Harvey L. Pitt, Daniel E. Loeb, on the brief), Jay Majors, Laura Sulem, Counsel, Fried, Frank, Harris, Shriver & Jacobson, New York, NY, for Third–Party Defendant–Appellant New York Stock Exchange, Inc.

Robert L. Raskopf, White & Case LLP, New York, NY, for Intervenor–Plaintiff–Appellee TheStreet.Com.

Richard L. Klein, Thomas H. Golden, Charles J. Glasser, Jr., Willkie Farr & Gallagher, New York, NY, for Amicus Curiae Bloomberg L.P.

Before: CABRANES, PARKER, and SOTOMAYOR, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

We consider here the appropriate standard to be applied by a court in deciding whether to modify or vacate a protective order it has entered in a civil lawsuit.

Third-party defendant-appellant New York Stock Exchange, Inc. ("NYSE") appeals from an order filed on April 11, 2001 by the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge*) granting the motion of intervenor-plaintiff-appellee TheStreet.com ("TSC"), an on-line business news service, to obtain access to certain portions of two deposition transcripts that had previously been sealed by the District Court. On appeal, NYSE argues that the Court erred by modifying its previously-entered protec-

tive order. For the reasons stated below, we affirm the order.

## I.

In 1998, federal authorities arrested, and a grand jury in the Southern District of New York indicted, ten stock brokers and brokerage officials for sharing profits on the trading floor of the NYSE, in violation of 15 U.S.C. §§ 78k & 78ff. In February 1998, while the criminal charges were still pending, the Securities and Exchange Commission ("SEC") filed a civil complaint pursuant to 15 U.S.C. § 78k(a) against the same defendants based on the illegal trading scheme that was the subject of the criminal charges. In the summer of 1998, the Court dismissed the SEC complaint without prejudice pending resolution of the criminal charges brought against those defendants and others. In March 2000, after the criminal charges against one of the brokers, defendant John D'Alessio, were dropped, and the remaining defendants pleaded guilty to the charges against them, the SEC revived its parallel civil complaint against D'Alessio and his company, D'Alessio Securities Inc. (collectively, "D'Alessio"). The SEC alleged that D'Alessio had engaged in illegal trading activities from 1993 to 1998, in violation of federal securities laws.

D'Alessio responded by filing an answer and a third-party complaint against the NYSE, in which he contended that the NYSE and four of its officers—Richard A. Grasso, Edward A. Kwalwasser, Robert J. McSweeney, and Brian McNamara (collectively, the "Officers")—were aware of, and encouraged, illegal trading activities on the exchange floor.

The SEC moved to strike ten of D'Alessio's thirteen affirmative defenses. The NYSE and the Officers moved to dismiss the entire third-party complaint. By two orders dated September 29, 2000, the District Court granted both motions. The District Court concluded that the NYSE and its employees had absolute immunity from claims arising from their performance of regulatory activities. Because D'Alessio's third-party complaint was based on such activities, the District Court dismissed that complaint. The Court also granted the SEC's motion to strike certain of the affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f).[1] D'Alessio continued to assert defenses in the SEC's civil action, contending that the claim was barred by the statute of limitations, failed to state a claim upon which relief can be granted, and failed to allege fraud with the requisite particularity.

On October 24, 2000, the District Court entered a Protective Order Governing Discovery ("October 2000 Order") to which the NYSE, the Officers, and D'Alessio (but not the SEC) had stipulated. Under the October 2000 Order, each party had the right to designate material as "confidential information" if it believed in good faith that the material should be so classified. Pursuant to the terms of the October 2000 Order, "[d]ocuments or other materials containing confidential information shall not be filed with the Court except when required by Court rules or in connection with motions or other matters pending before the Court." The District Court

---

1. Federal Rule of Civil Procedure 12(f) provides:

    Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, or scandalous matter.

noted, however, that it was "unlikely to afford confidential treatment to any discovery material otherwise covered by this order that is received in evidence at trial."

By November and early December 2000, Kwalwasser and William R. Johnston (another NYSE official) had provided deposition testimony at the demand of D'Alessio, who claimed that he needed their testimony to establish his remaining affirmative defenses in the SEC litigation. Believing that portions of these depositions contained sensitive information, the NYSE marked certain sections as confidential ("Confidential Testimony").

At some point in December 2000, the NYSE learned that a partially confidential deposition of Grasso, one of the Officers, including references to the Confidential Testimony of Kwalwasser and Johnston, had been disclosed to the press. The NYSE then moved "for enforcement of the October 24 Order or, in the alternative, for prospective relief in the form of an order under Federal Rule of Civil Procedure 26(c), ordering the future protection of the Confidential Testimony."[2]

On January 4, 2001, the District Court considered the motion, after closing the courtroom.[3] The District Court first considered whether the Confidential Testimony was covered by the October 2000 Order:

> I need to hear from you ... why the [October 2000 Order] applies at all, given the fact that [at] the deposition ... at least two parties who [were] not signatories to the protective order [were present] ... [I]t would seem on its face ... that [the SEC and MFS Securities'] presence waive any claim of confidentiality that might otherwise attach.

The Court then "tentatively [held] that there was no violation of the [October 2000] protective order." Next, the Court found that the Confidential Testimony contained sensitive information, and it indicated that it would issue a written protective order precluding disclosure of the Confidential Testimony. Accordingly, on January 24, 2001, the Court entered a protective order ("January 2001 Order") pursuant to Federal Rule of Civil Procedure 26(c) ("Rule 26(c)"), sealing the Confidential Testimony. The Court anticipated a trial date of early March or April 2001, but no date had been set as of January 4, 2001.

On March 14, 2001, TSC moved to intervene under Federal Rules of Civil Procedure 24(a) and 24(b) to gain access to the sealed Confidential Testimony.[4] TSC ar-

---

**2.** The Protective Order provided, in relevant part that

> 20. Any party may apply to the Court for additional protection or disclosure beyond the terms of this Protective Order with respect to confidential information, as that party may consider appropriate, subject to the Local Rules and Individual Rules of this Court.

Federal of Civil Procedure 26(c) provides in relevant part:

> **Protective Orders.** Upon motion by a party ... accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown,

the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense....

**3.** The Court stated: "Now, I think, then, we have to take up the sealed matter. I don't know who's here from the press ... I can't imagine this matter will take more than about ten minutes. If I can ask you to step outside."

**4.** Federal Rule of Civil Procedure 24 provides in relevant part:

> (a) **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the

gued that the public had a strong interest in having access to the Confidential Testimony because, in TSC's view, it related to the interaction between the SEC and the NYSE, two quasi-governmental agencies. After oral argument on April 10, 2001, the District Court granted the motion to intervene and ordered the Confidential Testimony unsealed:

> [N]ot withstanding the strong arguments made by counsel for the [NYSE] and counsel for the SEC and the court's own prior finding of good cause, I think there is a new balance that must be drawn now and that warrants the unsealing of those portions of the depositions that this court previously sealed.

In making this ruling, the District Court noted that "I don't think it is accurate to say that the interests of the intervenor were meaningfully represented at that hearing where I made my previous finding of good cause...." In light of TSC's arguments, the District Court held that there was a strong public interest in the information contained in the Confidential Testimony. Although the Court stated that disclosure of the Confidential Testimony would probably result in "some needless reputational harm," it concluded that "there [was] a specific nonconclusory [sic] relevant interest that the media might have in those depositions relating to the interaction of the SEC and the [NYSE] that outweigh[ed] [that] possible reputational harm." Accordingly, the Court ordered the Confidential Testimony unsealed and disclosed to TSC.[5] However, the Court

United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

**(b) Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

5. The full text of the April 10, 2001 oral ruling of the District Court is as follows:

But on the other hand, notwithstanding the strong arguments made by counsel for the Exchange and counsel for the SEC and the court's own prior finding of good cause, I think there is a new balance that must be drawn now and that warrants the unsealing of those portions of the depositions that this court previously sealed.

I don't think it is accurate to say that the interests of the intervenor were meaningfully represented at that hearing where I made my previous finding of good cause and I am persuaded that there is a specific nonconclusory [sic] relevant interest that the media might have in those depositions relating to the interaction of the SEC and the Stock Exchange that outweighs the possible reputational harm that may be involved in that disclosure.

I am not happy in reaching that conclusion. I think that the media varies in their concern for avoiding needless smears. Some media representatives are very sensitive to that issue and need no guidance from the court or anyone else and are true to their own highest ideals of professional ethics[.] [O]thers, experience suggests, don't always pay as much attention to the reputations of persons who are often not meaningfully able to protect themselves. But much as I fear that there may be some needless reputational harm involved, I think it is outweighed by the specific articulated and I think highly appropriate in-

stayed its order to afford the NYSE an opportunity to appeal. On April 16, 2001, the Court entered a Stipulation and Order maintaining the status quo pending appeal of the Court's order to unseal the Confidential Testimony.

The NYSE appeals the District Court's order unsealing the Confidential Testimony. It argues that the District Court erred as a matter of law in unsealing the Confidential Testimony because (1) the Confidential Testimony was not a "judicial document," see *United States v. Amodeo* 44 F.3d 141 (2d Cir.1995), and therefore not subject to a common-law right of access; and (2) even if it were a "judicial document," the privacy concerns raised by disclosure outweighed any presumption of access. In turn, TSC argues, without benefit of citation to authority, that "[t]he right of public access to material used in judicial proceedings is absolute."

## II.

### A. APPELLATE JURISDICTION

■ As a general rule, "interlocutory orders are not appealable as a matter of right," *Schwartz v. City of New York*, 57 F.3d 236, 237 (2d Cir.1995). The collateral order doctrine, is an exception to this rule and provides that an appellate court has jurisdiction over an interlocutory order if such order (1) "conclusively determined the disputed question"; (2) "resolved an important issue completely separate from the merits of the action"; and (3) "was effectively unreviewable on appeal from a final judgment." *Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir.1999); see also *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

■ The District Court's order unsealing the Confidential Testimony satisfies the requirements of the collateral order doctrine. First, the District Court's order "conclusively determined" the question of whether or not the Confidential Testimony would be disclosed. Second, the issue of disclosure of the Confidential Testimony was wholly separate from the underlying merits of the action, which involved alleged violations of the securities law. Third, because the alleged harm caused by disclosure of the Confidential Testimony will be immediate and irreparable, the order is unreviewable on appeal from a final judgment. Accordingly, we have jurisdiction to consider this appeal.

We turn now to the question of whether the District Court applied the appropriate standard in deciding to modify its protective order.

### B. STANDARD OF REVIEW

■ We review the District Court's order lifting its protective order for abuse of discretion.[6] *See In re "Agent Orange"*

---

terests that the intervenor puts forth for disclosure of those depositions.

**6.** As we have observed on another occasion, *see Zervos v. Verizon New York, Inc.*, 252 F.3d 163 (2d Cir.2001), a finding of "abuse of discretion" may mean the lower court committed any one of several errors:

> When a district court is vested with discretion as to a certain matter, it is not required by law to make a *particular* decision. Rather, the district court is empowered to make a decision—of its choosing—that falls with-

in a range of permissible decisions. A district court "abuses" or "exceeds" the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions.

*Id.* at 168–69 (citations omitted). Judge Sneed shed light on abuse of discretion review in an insightful unpublished manuscript:

*Prod. Liab. Litig.*, 821 F.2d 139, 147 (2d Cir.1987), (*"Agent Orange "*). As we have repeatedly observed, a District Court "necessarily abuses its discretion if its conclusions are based on an erroneous determination of law." *Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.* 246 F.3d 142, 146 (2d Cir.2001)(quoting *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 121 (2d Cir.2001)).

## C. MODIFICATION OF PROTECTIVE ORDER

■ Where there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) "absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need." *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir.1979); *see also FDIC v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir.1982). *Martindell* involved a request by the Government for access to pretrial deposition transcripts, taken in a civil action to which it was not a party, for the purposes of a criminal investigation into the same matters underlying the civil action. *Martindell*, 594 F.2d at 293. The depositions in question had been "taken pursuant to a court-approved stipulation ... that the depositions should be treated as confidential and used solely by the parties for prosecution or defense of the [civil] action." *Id.* at 292. We suggested that there is a strong presumption against the modification of a protective order and affirmed the decision of the District Court to decline to modify its protective order, thereby denying the Government access to the transcripts.[7] *Id.* at 296. As we stated in *Martindell*, protective orders issued under Rule 26(c) serve "the vital function ... of 'secur[ing] the just, speedy, and inexpensive determination' of civil disputes ... by encouraging full disclosure of all evidence that might conceivably be relevant. This objective represents the cornerstone of our administration of civil justice." *Id.* at 295 (citations omitted). Without an ability to restrict public dissemination of certain discovery materials that are never introduced at trial, litigants would be subject to needless "annoyance, embarrassment, oppression, or undue burden or expense." Rule 26(c). And if previously-entered protective orders have no presumptive entitle-

---

To have *discretion* is to have *choice*. To have choice is to be able to choose one course of action over one or more others with *immunity* from reversal by a higher court because of the course selected. The range of choice is determined by the number of permissible courses of action that exist.

United States Circuit Judge Joseph T. Sneed, *Trial Court Discretion: Its Exercise by Trial Courts and its Review by Appellate Courts*, Address to the Judges of the Second Circuit (Apr. 19, 1982) *quoted in Zervos*, 252 F.3d at 169.

7. Some district courts in our Circuit have incorrectly concluded that the *Martindell* rule only applies when the Government seeks modification of a protective order. *See, e.g., Bayer AG and Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 460–61 (S.D.N.Y.1995). Though *Martindell* did involve a Government request to modify a protective order, its logic is not restricted to Government requests, nor did our opinion in *Martindell* suggest otherwise. Rather, as we stated there, "a witness should be entitled to rely upon the enforceability of a protective order against *any third part[y]*, including the Government." *Martindell*, 594 F.2d at 296 (emphasis added); *see also FDIC v. Ernst & Ernst*, 677 F.2d at 232 (applying the *Martindell* test where the third-party was a non-profit consumer organization). *But see Bristol–Myers Squibb Co. v. Rhone–Poulenc Rorer, Inc.*, No. 95 CIV. 8833 RPP, 1999 WL 76938, at *3 (S.D.N.Y. Feb. 16, 1999) ("The 'compelling need' standard [of *Martindell*] does not govern declassification of material when a governmental entity is not involved."); *Merchants Bank v. Vescio*, 222 B.R. 236, 239–40 (D.Vt.1998) (same); *Bayer*, 162 F.R.D. at 461 (same).

ment to remain in force, parties would resort less often to the judicial system for fear that such orders would be readily set aside in the future.[8]

If protective orders were easily modified, moreover, parties would be less forthcoming in giving testimony and less willing to settle their disputes: "Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation...." *Martindell,* 594 F.2d at 295. Indeed, we have observed that protective orders can provide a powerful incentive to deponents who would not otherwise testify. *Id.* at 296 (finding that "the deponents testified in reliance upon the Rule 26(c) protective order, absent which they may have refused to testify"). We have also noted the reliance on protective orders by parties otherwise reluctant to reach a settlement: "On the first day of what promised to be a lengthy trial, FDIC and Ernst & Ernst were able to reach a settlement provided, as Ernst & Ernst insisted, that there would be a court order ensuring the confidentiality of the terms of the settlement." *Ernst & Ernst,* 677 F.2d at 231. In some cases, settlement would not be possible but for the parties' reliance on a protective order. *See City of Hartford v. Chase,* 942 F.2d 130, 136 (2d Cir.1991) (concluding that initial decision to seal settlement documents not improper because

"a judicial assurance of confidentiality was a prerequisite to the parties' decision to settle their dispute."). Thus, another compelling reason to discourage modification of protective orders in civil cases is to encourage testimony in pre-trial discovery proceedings and to promote the settlement of disputes.

It is, moreover, presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied. In *Palmieri v. State of New York,* 779 F.2d 861 (2d Cir.1985), we suggested the inequity of modifying a protective order to provide access to the Attorney General of New York where that order was the only reason the litigants had been afforded access to certain documents:

> [H]ere the very papers and information that the Attorney General seeks apparently would not even have existed but for the sealing orders and the magistrate's personal assurances of confidentiality, upon which the appellants apparently relied in agreeing to enter closed-door settlement negotiations.

*Id.* at 865. We have been hesitant, therefore, to permit modifications of protective orders in part because such modifications unfairly disturb the legitimate expectations of litigants.

On the other hand, some protective orders may not merit a strong presumption

---

8. See, for example, *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 35–36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) where the Supreme Court observed that "[t]he prevention of the abuse that can attend the coerced production of information under a State's discovery rule is sufficient justification for the authorization of protective orders." The Court went on to quote the Washington Supreme Court approvingly on the importance of protective orders:

> The Supreme Court of Washington properly emphasized the importance of ensuring that potential litigants have unimpeded access

to the courts: "[A]s the trial court rightly observed, rather than expose themselves to unwanted publicity, *individuals may well forgo the pursuit of their just claims.* The judicial system will thus have made the utilization of its remedies so onerous that the people will be reluctant or unwilling to use it, resulting in frustration of a right as valuable as that of speech itself."
*Id.* at 36 n. 22, 104 S.Ct. 2199 (emphasis added) (quoting *Rhinehart v. Seattle Times Co.,* 98 Wash.2d 226, 654 P.2d 673, 689 (1982)).

against modification. For instance, protective orders that are on their face temporary or limited may not justify reliance by the parties. Indeed, in such circumstances reliance may be unreasonable. In *Agent Orange* we held that

> appellants ... could not have relied on the permanence of the protective order.... [B]y its very terms, [the order] was applicable solely to the pretrial stages of the litigation ... [and] would be reconsidered upon commencement of the trial.... Any reliance on such a sweeping temporary protective order simply was misplaced.

821 F.2d at 147. Where a litigant or deponent could not reasonably have relied on the continuation of a protective order a court may properly permit modification of the order.[9] In such a case, "[w]hether to lift or modify a protective order is a decision committed to the sound discretion of the trial court." *Id.; see Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir.1993); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir.1990); CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE § 2044.1 (2d ed.1994).

## D. PUBLIC ACCESS TO "JUDICIAL DOCUMENTS"

While *Martindell* established a general and strong presumption *against access* to documents sealed under protective order when there was reasonable reliance upon such an order, see *id.* § 2044.1 (describing

*Martindell* as maintaining "a very restrictive attitude toward modification of protective orders"), we have held more recently in *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir.1995) ("*Amodeo I*") that a subspecies of sealed documents in civil cases—so-called "judicial documents"—deserve a presumption *in favor of access.* Though *Amodeo I* did not refer to *Martindell*, it left the general rule of *Martindell* undisturbed.

■ *Amodeo I* involved a court-appointed monitor who filed sealed investigative reports with the District Court in connection with her duties overseeing a consent decree. A third-party newspaper sought access to the sealed documents. We recalled the "long-established," *id.* at 145, but not absolute, *id.* at 146–47, common law right of public access to "judicial documents," but also cautioned that the "mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of access." *Id.* at 145. "Judicial documents," entitled to a presumption of public access, are "item[s] filed [with the court that are] relevant to the performance of the judicial function and useful in the judicial process." *Id.* These may include documents that have been sealed. With respect to all judicial documents, however, we held that, "it is proper for a district court, *after weighing competing interests,* to edit and redact a judicial document in order to allow access to *appropriate* portions of the document...." *Id.* at 147 (emphasis added).[10] Because the sealed reports in *Amo-*

---

9. At least one District Court in our Circuit has incorrectly concluded that *Agent Orange* established a new rule that created "a presumption that discovery materials should be publicly available whenever possible, i.e., absent a showing of good cause for shielding them from view." *Westchester Radiological Ass'n v. Blue Cross/Blue Shield*, 138 F.R.D. 33, 36 (S.D.N.Y.1991).

10. We noted several "competing interests in a variety of contexts in determining whether to grant access to judicial documents," including whether

> [t]he public has in the past been excluded, temporarily or permanently, from ... the records of court proceedings to protect private as well as public interests: to protect trade secrets, or the privacy and reputation

*deo I* assisted the District Court in the performance of its Article III function of enforcing the consent decree, we held that the reports were indeed "judicial documents" and thus presumptively available to the public. *Id.* at 146.

■ After establishing in *Amodeo I* a right of access to a sealed report deemed to be a "judicial document," we considered the standards that ought to be employed by a court in light of objections to disclosure of such a document. *United States v. Amodeo,* 71 F.3d 1044, 1049 (2d Cir.1995)("*Amodeo II*"). We required the District Court to determine the weight of the presumption of public access by evaluating "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* We reiterated that the "public has an 'especially strong' right of access to evidence introduced in trials." *Id.* In contrast, we reaffirmed the principle that

> [d]ocuments that play no role in the performance of Article III functions, *such as those passed between the parties in discovery,* lie entirely beyond the presumption's reach and stand on a different footing than a motion filed by a party seeking action by the court, or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions.

*Id.* at 1050 (emphasis added; alterations, internal quotations marks, and citations omitted). After instructing the District Court to determine the weight of the presumption of public access, we then required it to "balance [the] competing considerations against [that presumption]." *Id.* We identified at least two "countervailing factors": (1) the danger of impairing law enforcement or judicial efficiency; and (2) the privacy interests of those who resist disclosure.

As we observed with regard to the first countervailing factor,

> [o]fficials with law enforcement responsibilities may be heavily reliant upon the voluntary cooperation of persons who may want or need confidentiality. If that confidentiality cannot be assured, cooperation will not be forthcoming.... One consideration, therefore, is whether public access to the materials at issue is likely to impair in a material way the performance of Article III functions.

*Id.*

In describing the second countervailing factor—the privacy interest of those who resist disclosure—we concluded that "the privacy interests of innocent third parties ... should weigh heavily in a court's balancing equation." *Id.* (quoting *United States v. Biaggi (In re New York Times Co.),* 828 F.2d 110, 116 (2d Cir.1987)). We also stated that the weight of the privacy interest should depend on "the degree to which the subject matter is traditionally considered private rather than public." *Amodeo II,* 71 F.3d at 1051. Finally, we indicated that a court should consider "the nature and degree of injury" as well as whether "there is a fair opportunity for the subject to respond to any accusations contained therein." *Id.*

### III.

■ At the outset, we must determine whether to apply the presumption in favor of access set forth in the *Amodeo* cases or the presumption against access set forth in

---

of victims of crimes, as well as to guard against risks to national security interests, and to minimize the danger of an unfair trial by adverse publicity.

We have [elsewhere] recognized the law enforcement privilege as an interest worthy of protection.

*Amodeo I,* 44 F.3d at 147 (citations omitted).

*Martindell.* The NYSE urges us to apply *Amodeo I* and *Amodeo II* to conclude that the documents in question are not "judicial documents" and thus should not be disclosed. We agree with the NYSE that these were not "judicial documents" within the meaning of the *Amodeo* cases. The Confidential Testimony is deposition discovery material, which we have concluded are "[d]ocuments that play no role in the performance of Article III functions." *Id.* at 1050; *cf. Joy v. North,* 692 F.2d 880, 893 (2d Cir.1982) ("Discovery involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public."). The testimony did not "directly affect an adjudication" nor does it significantly "determin[e] litigants' substantive rights." *Amodeo II,* 71 F.3d at 1049. To this extent, the documents are similar to material related to settlement discussions and documents, which we have concluded "do not carry a presumption of public access." *United States v. Glens Falls Newspapers, Inc.,* 160 F.3d 853, 857 (2d Cir.1998).

TSC contends that the very exercise by the District Court of its power to enter a protective order and to seal the Confidential Testimony transformed the Confidential Testimony into a "judicial document" presumptively open to the public. In other words, TSC claims that the Confidential Testimony is a "judicial document" because the Court reviewed it in order to decide whether or not to enter the protective order. This argument is without merit. Indeed, the rule TSC urges us to adopt would transform every document that a court reviews into a "judicial document" presumptively open to the public, despite well-settled law to the contrary. *Cf. United States v. Wolfson,* 55 F.3d 58, 61 (2d Cir.1995) ("We are not aware ... of any common-law principle that documents submitted to a court *in camera* for the sole purpose of confirming that the refusal to disclose them to another party was proper, are to be deemed judicial records open to the public.") That was neither the holding nor the implication of *Amodeo I or II,* much less *Martindell.*[11]

■ Even though the documents at issue here are not "judicial documents," presumptively open to the public under the *Amodeo* cases, this conclusion, standing alone, does not end our inquiry. We must next determine whether *Martindell's* presumption against access should apply. We conclude that the District Court was correct, in the circumstances presented, not to apply *Martindell's* strong presumption against access. Unlike in *Martindell,* the deponents in the instant case could not have provided their November December depositions in reasonable reliance on any of the protective orders at issue here.

The Court apparently found that the confidentiality of the testimony could not be protected under the *October 2000 Order* because of the presence, during the deposi-

---

**11.** Alternatively, TSC contends that, even if the materials in question are not judicial documents, the *Agent Orange* line of cases carves out an additional presumption in favor of access to all discovery materials. However, to the extent that *Agent Orange* relied upon Federal Rule of Civil Procedure 5(d) to find a statutory right of access to discovery materials, we observe that the recent amendment to this rule provides no presumption of filing all discovery materials, let alone public access to them. Indeed, the rule now *prohibits* the filing of certain discovery materials unless they are used in the proceeding or the court orders filing. FED.R.CIV.P. 5(d). ("All papers ... must be filed with the court ... but disclosures under Rule 26(a)(1) or (2) and the following discovery requests and responses must not be filed until they are used in the proceeding or the court orders filing: (i) depositions, (ii) interrogatories, (iii) requests for documents or to permit entry upon land, and (iv) requests for admission.").

tions, of interested third parties who had not agreed to be bound by that order. We need not decide whether or not the District Court was correct to suggest, and effectively decide, that the NYSE or its officers had waived any claim of confidentiality due to the presence of persons not bound by the October 2000 Order. The record shows that the NYSE did not press its opening argument that there was no waiver of confidentiality, nor did it question the Court's suggestion of waiver during the January 4, 2001 argument or the April 10, 2001 argument, thus effectively abandoning this claim. Moreover, the NYSE did not at any time contend that the Officers had reasonably relied on the October 2000 Order in giving their Confidential Testimony.

The *January 2001 Order* entered by the Court could not have provided a basis for reliance because the deponents had provided Confidential Testimony at least a month *before* the entry of that order.[12] Accordingly, the strong presumption against public disclosure of pretrial discovery materials placed under seal by a protective order of a court, *see Martindell,* 594 F.2d at 296, never came into play here. Absent such a presumption, the Court could reasonably conclude, in the exercise of its informed discretion, that in the particular circumstances presented, the intervention of a media enterprise for the limited purpose of gaining access to the sealed documents required the striking of a new balance between privacy rights and the interest of the general public: "I think there is a new balance that must be drawn now and that warrants the unsealing of those portions of the depositions that this court previously sealed." In particular, the Court held "that there is a specific nonconclusory [sic]

relevant interest that the media might have in those depositions relating to the interaction of the SEC and the [NYSE] that outweighs the possible reputational harm that may be involved in that disclosure." This conclusion did not fall beyond the scope of the District Court's allowable discretion.

## Conclusion

To summarize:

1. Under *Amodeo I* and *Amodeo II,* there is a presumption *in favor* of public access to "judicial documents" (as therein defined).

2. In the case of documents that are not "judicial documents" and that have been placed under seal pursuant to a protective order entered under Rule 26(b) of the Federal Rules of Civil Procedure, the rule of *Martindell* establishes a strong presumption *against* public access where it is established that the party claiming privacy has reasonably relied on the protective order.

3. The Confidential Testimony here, consisting of pretrial depositions, was not a "judicial document" within the meaning of *Amodeo I* and *Amodeo II,* and was placed under seal by a protective order of the District Court.

4. However, the depositions in question were taken prior to the entry of the relevant protective order, so that, as far as the record before us discloses, the depositions could not have been given in reasonable reliance on that order.

5. Absent such reliance on a protective order, the rule of *Martindell*—establishing a strong presumption *against* public access

---

12. We do not foreclose the possibility that parties might enter into an agreement or stipulation to protect the confidentiality of discovery materials before presenting a proposed protective order to a court and thus might be found to have reasonably relied on such an agreement and order with respect to discovery materials that antedate the order.

to pretrial discovery materials held under seal pursuant to a protective order—was not applicable.

6. Accordingly, in the particular circumstances presented here, the District Court's decision to consider anew the balance between the claims of privacy and the claims of the public for access to the Confidential Testimony, and its decision after balancing those considerations, were not an abuse of the Court's allowable discretion.

The District Court's order of April 10, 2001 unsealing the Confidential Testimony is affirmed.