## JOHN F. WELCH, JR. *v.* JANE B. WELCH

Superior Court, Judicial District of Fairfield

File No. FA02 0392039S

Memorandum filed February 10, 2003

*D. K. Webb*, pro hac vice, and *Schoonmaker, George & Colin*, for the plaintiff.

*W. Zabel,* pro hac vice, and *Marvin & Ferro,* for the defendant.

HILLER, J. The plaintiff, John F. Welch, Jr., seeks a protective order pursuant to Practice Book § 13-5 prohibiting the disclosure of information and documents obtained through discovery and deposition.

Practice Book § 13-5 permits a court, for good cause shown, to "make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Such orders may provide that discovery be had only on specified terms and conditions, that discovery be conducted with no one present except persons designated by the judicial authority and that a deposition after being sealed be opened only by order of the judicial authority. Good cause has been defined as "a sound basis or legitimate need to take judicial action." (Internal quotation marks omitted.) *DGG Properties Co.* v. *Konover Construction Corp.,* Superior Court, judicial district of New Britain, Docket No. X03 CV 99 0501534 (September 19, 2000) *(Aurigemma, J.).* Good cause must be based on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements. *Associated Construction Co.* v. *Milford,* Superior Court, judicial district of Ansonia-Milford, Docket Nos. CV 88 025081S, CV 88 025082S and CV 88 025083S (December 28, 1988) (4 C.S.C.R. 130, 131) *(Kulawiz, J.).*

Rule 26 of the Federal Rules of Civil Procedure provides this same authority to federal courts for the issuance of protective orders and for the same reasons. Rule 26 orders have been made "not only with regard to depositions but also for answers to interrogatories and other forms of discovery. If a court orders a deposition or other discovery sealed it normally prohibits the parties and attorneys from making any disclosure of

the contents of the discovery to any third party." 8 C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure (2d Ed. 1994) § 2042, pp. 543–44, citing *Morgan* v. *United States Dept. of Justice*, 923 F.2d 195, 197 n.2 (D.C. Cir. 1991).

In addition to Practice Book § 13-5, chapter 815 of the General Statutes, entitled "Court Proceedings in Family Relations Matters," contains two statutes permitting the court in family relations matters to order records and papers kept confidential and not open to inspection. General Statutes § 46b-11 provides in relevant part that any "*family relations matter may be heard in chambers . . . if the judge hearing the case determines that the welfare of any children involved or the nature of the case so requires*" and that "*records and other papers . . . may be ordered . . . kept confidential and not to be open to inspection except upon order of the court or judge thereof for cause shown.*" (Emphasis added). Thus, in a family relations matter, if the court determines that the papers and records should be kept confidential, the burden to show good cause would be on the party requesting to unseal or open the documents. Practice Book § 25-59, a rule of procedure in family matters, also provides that records and other papers in any family matter may be ordered kept confidential and not be opened to inspection except upon order of the court or judge thereof.

General Statutes § 46b-49 also provides for private hearings in family relations matters when it is necessary in the interest of justice and the persons involved.

"[A]ll these provisions give the court authority to close proceedings and to seal files where there is a particular interest to be protected and that interest overrides the public's interest in attending such proceeding or in viewing such materials." (Internal quotation marks omitted.) *Saundry* v. *Saundry*, Superior Court, judicial

district of New Haven at Meriden, Docket No. FA 960253546S (July 15, 1996) (17 Conn. L. Rptr. 373–74) (*Silbert, J.*). In *Wendt* v. *Wendt*, 45 Conn. Sup. 208, 706 A.2d 1021 (1996), for example, the plaintiff was president and chief executive officer of General Electric Services, Inc., as well as senior vice president of General Electric Corporation, with vested and unvested stock options and shares of General Electric stock. The court closed the hearing and sealed the file because the likely effect on the market value of General Electric shares was determined to be an overriding interest. Id., 216. The court based its order upon the authority of §§ 46b-11 and 46b-49 and the procedures established in Practice Book §§ 211B [now § 13-5] and 478 [now § 25-59]. *Wendt* v. *Wendt*, supra, 217.

The request here is not for closing a courtroom, but rather to keep information confidential, which the parties are required to produce for the other during the discovery process. The scope of discovery permitted by both the Connecticut and federal rules of procedure is broad. It is not ground for objection that the information sought would be inadmissible at trial as long as the information sought appears to be reasonably calculated to lead to the discovery of admissible evidence. Practice Book § 13-2; Fed. R. Civ. P. § 26 (b) (1). In fact, "[m]ost States . . . have adopted discovery provisions modeled on Rules 26 through 37 of the Federal Rules of Civil Procedure" with its broad scope of discovery. *Seattle Times Co.* v. *Rhinehart*, 467 U.S. 20, 29, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984). "Rule 26 (c) was adopted as a safeguard for the protection of parties and witnesses in view of the almost unlimited right of discovery given by Rule 26 (b) (1)." 8 C. Wright, A. Miller & R. Marcus, supra, § 2036, p. 487. "Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying

cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Seattle Times Co.* v. *Rhinehart*, supra, 33. "As in all civil litigation, [the defendants will gain] the information they wish to disseminate only by virtue of the trial court's discovery processes. As the Rules authorizing discovery were adopted by the state legislature, the processes thereunder are a matter of legislative grace. A litigant has no First Amendment right of access to information made available only for purposes of trying his suit. . . . Thus, continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations." (Citation omitted.) Id., 32.

It is important to distinguish information and materials obtained as a result of the discovery process from those contained in the court file. "[P]retrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law . . . and, in general, they are conducted in private as a matter of modern practice." (Citation omitted.) Id., 33.

Connecticut's rules of practice provide that depositions, after transcription, are to be sealed and not to be delivered to court until the time of trial. Practice Book § 13-30 (e). A deposition is not an "open" proceeding. *Lupone* v. *Lupone*, Superior Court, judicial district of New Haven, Docket No. 446200 (July 3, 2001) (*Pittman, J.*), citing *Seattle Times Co.* v. *Rhinehart*, supra, 467 U.S. 20. Similarly, neither interrogatories and answers to interrogatories; Practice Book §§ 13-6 and 13-7; nor requests for or notices of requests for production and responses are filed with the court. Practice Book §§ 13-9 and 13-10. The same is true in federal court. Under an amendment to rule 5 (d) of the Federal Rules of Civil Procedure, which became effective in

2000, courts are not to permit filing of discovery materials of any sort until they are used in the action. Local rule 13 of the United States District Court for the District of Connecticut similarly provides that depositions are deemed to constitute private proceedings that the public is not entitled to attend, and that transcripts and exhibits shall not be filed with the court clerk unless the parties cannot agree as to who shall retain custody, in which situation the clerk shall withhold them from public inspection.

In *Branzburg* v. *Hayes*, 408 U.S. 665, 684, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972), the court stated: "It has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally."

Moreover, in *Times Newspapers Ltd. (of Great Briain)* v. *McDonnell Douglas Corp.*, 387 F. Sup. 189 (C.D. Cal. 1974), the court held: "Enforcement of the *principles of sealing and privacy of depositions*, until they were ordered opened by the court, which were adopted by the First Congress, and carried through with no alteration of principle for 185 years, *demonstrates not only the wisdom but also the necessity of abiding by those principles. . . .* In sum, this court holds: That depositions before a qualified officer in an equity or law case are *not a judicial trial, nor a part of a trial, but a proceeding preliminary to a trial, and neither the public nor representatives of the press have a right to be present at such taking. Until a deposition has been presented to the court* [*not the Clerk*]*, and ordered opened*, it does not become evidence in the case, nor has either party until then an opportunity to be heard upon the question of the competency, materiality, or relevancy of the statements made by the witness, and *the public can have no right to know what the testimony is until the court knows what it is.*" (Emphasis added.) Id., 197.

In *Seattle Times Co.* v. *Rhinehart,* supra, 467 U.S. 20, the United States Supreme Court made it clear that restrictions on the use of information through court authorized liberal discovery procedures may be warranted to protect the privacy and reputation of litigants and third parties. "Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26 (b) (1), it is necessary for the trial court to have the authority to issue protective orders . . . . It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may *seriously implicate privacy interests of litigants and third parties. . . .* There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released *could be damaging to reputation and privacy.* The government clearly has a substantial interest in preventing this sort of abuse of its processes. . . . The prevention of the abuse that can attend the coerced production of information under a State's discovery rule is sufficient justification for the authorization of protective orders." (Citations omitted; emphasis added.) Id., 34–36.

The court further noted: "We therefore hold that where . . . a protective order is entered on a showing of good cause as required by Rule 26 (c), is limited to the context of pretrial civil discovery . . . it does not offend the First Amendment." Id., 37.

The deposition, notices and associated document requests, already issued, clearly demonstrate that the scope of discovery in the present dissolution action will be far reaching and will seek documents and inquire into a wide range of personal and financial information of a distinctly private nature. Several third parties,

including General Electric, Shearman & Sterling, the defendant's former employer, and the defendant's personal employee, Lisa Maurer, have been or are in the process of being requested to give testimony and produce documents in connection with the present litigation.

The breadth and scope of this discovery will certainly touch on many personal and private matters that may never be offered as or admitted into evidence. This circumstance, together with the defendant's admitted intent to provide information so obtained to the media to gain public support or to contradict prior stories, warrants the imposition of a protective order. "Protective orders are useful to prevent discovery from being used as a club by threatening disclosure of matters which will never be used at trial. Discovery involves the use of compulsory process to facilitate orderly preparation for trial, *not to educate or titillate the public.*" (Emphasis added.) *Joy* v. *North*, 692 F.2d 880, 893 (2d Cir. 1982), cert. denied sub nom. *Citytrust* v. *Joy*, 460 U.S. 1051, 103 S. Ct. 1498, 75 L. Ed. 2d 930 (1983). "[T]he fear of adverse publicity, intimidation or other outside forces that could interfere with the free flow of information, most of which would not be admissible during the actual litigation stages of [the case]" has been found to justify entry of a protective order. (Internal quotation marks omitted.) *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 355–56 (11th Cir. 1987).

In *Securities & Exchange Commission* v. *TheStreet.com.*, 273 F.3d 222 (2d Cir. 2001), Judge Cabranes explained the need for such protective orders as follows: "As we stated in *Martindell* [v. *International Telephone & Telegraph Corp.*, 594 F.2d 291, 296 (2d Cir. 1979)], protective orders issued under Rule 26 (c) serve the vital function . . . of secur[ing] the just, speedy, and inexpensive determination of civil disputes . . . by encouraging full disclosure of all evidence that

might conceivably be relevant. This objective represents the cornerstone of our administration of civil justice. . . . Without an ability to restrict public dissemination of certain discovery materials that are never introduced at trial, litigants would be subject to needless annoyance, embarrassment, oppression, or undue burden or expense." (Citation omitted; internal quotation marks omitted.) *Securities & Exchange Commission* v. *TheStreet.com*, supra, 229.

There is no question that the present case has already drawn significant media attention. A family relations matter, as the present case is, generally does not relate to matters of public safety or involve matters of national security, where the public disclosure of information could override the need for privacy. The present case is a private matter between private people. "The materials produced in discovery, although produced in a regimen of court rules in a dispute that will be tried in a public courtroom are nonetheless private. There is, for example, no right under the First Amendment to publish material produced in discovery and a protective order is not a prior restraint of free expression." 6 J. Moore, Federal Practice (3d Ed. 2003) § 26.101 [1] [a], p. 26–240.

The court finds that the plaintiff has shown good cause for a protective order. The plaintiff's motion, therefore, is granted and a protective order is entered as follows.

First, all information obtained during pretrial discovery in the present matter shall be treated as confidential, and neither it nor its contents shall be disclosed orally or in writing or used for any purpose other than the present litigation.

Second, disclosure to the press of any information obtained during pretrial discovery in the present matter shall not be deemed to be consistent with the purpose of the present litigation.

Third, and finally, any person or entity to whom pre-trial discovery information is disclosed for use in the present litigation shall be given a copy of this order and, prior to disclosure, shall sign a document acknowledging its receipt and agreement to be bound by its terms.